**In re CORRUGATED CONTAINER ANTITRUST LITIGATION.**

**KRAFT, INC., Plaintiff-Appellee,**

**v.**

**ALTON BOX BOARD CO., et al., Defendants,**

**and**

**Container Corporation of America, Defendant-Appellant.**

**No. 81–2036.**

United States Court of Appeals, Fifth Circuit.*

Unit A

Oct. 29, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd., Glenn W. McGee, James A. Rahl, William T. McGrath, David E. Bennett, Chicago, Ill., for defendant-appellant.

Freeman, Rothe, Freeman & Salzman, Jerrold E. Salzman, Chicago, Ill., Herbert M. Wachtell, New York City, for plaintiff-appellee.

Before CHARLES CLARK, TATE and WILLIAMS, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The Container Corporation of America (Container), one of the defendants in this multidistrict action, appeals an order of the district court disqualifying its counsel, Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd. (hereinafter Chadwell or the Chadwell Firm). The district court correctly held that the Chadwell Firm's representation of Container violates Canon 9 of the American Bar Association Code of Professional Responsibility (1980).

The facts pertinent to this appeal are in large part undisputed. In 1930, an ex-general counsel of Kraft, Inc., formed the Chadwell Firm. From that time until 1972, Chadwell maintained a close relationship with Kraft and served as the general counsel for the Kraft Foods Division. In this capacity, Chadwell advised the Foods Division on a daily basis pertaining to various legal questions, and Chadwell conducted almost all of the antitrust litigation for Kraft, Inc. The Foods Division of Kraft is the division within that corporation that purchases by far the highest volume of corrugated container material. In its capacity as general counsel, Chadwell counseled the Foods Division with respect to the impact of the antitrust laws upon their purchasing activities. At the time of the district court's order, Chadwell was still representing Kraft in other matters, and at oral argument we were told that this was still the case. As an indication of the extent of the continuing relationship between Chadwell and Kraft, for the period between January 1974 and June 1980, the Chadwell Firm billed Kraft for approximately 40,000 hours of work, 26,000 of which were for antitrust matters. Kraft paid legal fees to Chadwell in excess of $2 million during this period. The Chadwell Firm continues to represent Kraft, but it has never represented Kraft in this litigation. A close personal relationship still exists between many of the Chadwell lawyers and various executives of Kraft. All but two of the present Chadwell lawyers have done legal work of some description for Kraft. Every Chadwell lawyer has signed an affidavit swearing that he has obtained no confidential information from Kraft concerning this litigation.

Chadwell began representing Container in 1973. This representation extended to the criminal and civil proceedings in the Folding Carton antitrust litigation in Chicago, Illinois, and the Corrugated Container antitrust litigation in Houston, Texas.

Kraft has been a class plaintiff, and later an opt-out plaintiff in both the Folding Carton and the Corrugated Container actions. Kraft and Container are no minor actors in this litigation. Kraft asserts, and Container does not deny, that Kraft is a major purchaser and Container is a significant manufacturer of corrugated material. In a ruling related to the one appealed from here, the district court found that Container had the largest share of the corrugated market from 1970–1977, approximately 6%. Container supplied approximately 25% of Kraft's corrugated needs during the relevant period.

In October, 1979, Kraft opted out of the class action in the Corrugated Container case. Soon thereafter, Chadwell filed its notice of appearance on behalf of Container in the opt-out suit that Kraft filed. On December 7, 1979, Kraft and the Chadwell representatives held a meeting to attempt to resolve the asserted conflict of interest. While it was agreed that Chadwell would withdraw if it appeared that its representation of Container would prejudice Kraft, it was not agreed who would have the authority to make that determination. The parties' hope to reach a written agreement was not fulfilled. In May, 1980, Container, through its attorneys in the Chadwell Firm, served interrogatories on Kraft which inquired into two matters that the district court found were substantially related to

Chadwell's representation of Kraft. The first was whether the decision of the Supreme Court in *United States v. Container Corporation of America*, 393 U.S. 333, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969), should have made Kraft aware of its rights, thus vitiating its fraudulent concealment defense to the four-year statute of limitations. The second inquiry related to Kraft's purchasing practices in general and its practices relating to corrugated products. Kraft asserts this is intended to show that it was *in pari delicto* with the antitrust conspirators, thus precluding its recovery. Affidavits submitted to the district court indicate that in mid-December, 1979, Container sought to amend its answer in the Folding Carton litigation to assert an *in pari delicto* defense. Upon receiving these interrogatories, Kraft formally requested that Chadwell withdraw its representation of Container. When Chadwell refused, Kraft filed this motion to disqualify.

The district court based its decision upon three of the Canons of the American Bar Association Code of Professional Responsibility (1980) (Code), holding that any one of these Canons is sufficient to support a disqualification order.

Canon 4 of the Code of Professional Responsibility, as interpreted by this court, proscribes the subsequent representation of a client adverse to the attorney's former client where there is a "substantial relationship" between the matters involved in the two representations.[1] The district court found that there was a substantial relationship between the two issues raised by Container's interrogatories to Kraft, discussed above, and Chadwell's representation of Kraft prior to 1973. The district court rejected Chadwell's argument that Kraft had consented to Chadwell's representation of Container in this case by consenting to that representation in the Folding Carton litigation.

The district court also held that Chadwell could not give its undivided loyalty to either one of these present clients and that disqualification was required under Canon 5.[2]

The district court finally held that disqualification was required under Canon 9 to avoid the appearance of impropriety. *See* ABA Code of Professional Responsibility EC9–6 (1980).[3] The district court found that Chadwell's situation "presents an unsavory picture of the legal profession."

█ Before reaching the merits of this appeal we must first address a jurisdictional problem: the appealability of the disqualification order. For some time, the rule in this circuit has been that orders either denying or granting motions to disqualify an opposing party's counsel in a civil case were appealable final decisions under 28 U.S.C. § 1291. Our rule as to orders denying such motions has been changed by the ruling of the Supreme Court in *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). The Court there held that orders denying such motions were not appealable under 28 U.S.C. § 1291, but the Court declined to rule on whether orders granting such motions were appealable. *Id.* at 378, 372 n.8, 101 S.Ct. at 676, 672 n.8, 66 L.Ed.2d at 581, 577 n.8. Since *Firestone*, this court has held that orders granting motions to disqualify counsel are appealable. *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526 (5th Cir. 1981); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020 (5th Cir. 1981). *Duncan* contains an extended discussion of the rule in this circuit prior to *Firestone* and holds that *Firestone* does not change this circuit's rule as to orders granting motions to disqualify counsel. *Id.* at 1024–27. Under prevailing circuit precedent, we have jurisdiction.

█ Though the district court based its decision on Canons 4, 5, and 9 of the Code,

---

1. Canon 4 provides: "A Lawyer Should Preserve the Confidences and Secrets of a Client."

2. Canon 5 provides: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client."

3. Canon 9 provides: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety."

our focus is on Canon 9 only. To determine whether a lawyer has avoided "even the appearance of professional impropriety" under Canon 9, this court requires that the movant show there is a reasonable possibility of the occurrence of "specifically identifiable appearance of improper conduct," and that the "likelihood of public suspicion or obloquy outweighs the social interest" in obtaining counsel of one's choice. *Duncan*, 646 F.2d at 1032; *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979); *Woods v. Covington County Bank*, 537 F.2d 804, 812–13 (5th Cir. 1976).

We first focus on whether there has been a showing that there is a reasonable possibility that some specific impropriety has in fact or will in fact occur. In order to show this specific impropriety, we turn to the arguments counsel have made pertaining to Canon 4, for it is clear that violations of other Canons may implicate Canon 9 as well.[4] *Duncan*, 646 F.2d at 1032; *Brennan's*, 590 F.2d at 172. In order to establish a violation of Canon 4, this court has required that there have been an actual attorney-client relationship between the party seeking disqualification and the attorney, and that the matters involved in the present litigation be substantially related to the matters involved in the former representation. *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977).

There is no question in this case that Kraft and Chadwell have enjoyed an attorney-client relationship for the past fifty years. Indeed, for most of those years, Chadwell served as general counsel to the Kraft Foods Division, a fact which distinguishes *Duncan*. The second requirement is that there be a substantial relationship between Kraft's opt-out action[5] and the prior representation of Kraft by Chadwell. Two issues already mentioned are common to this case and to the prior representation.

The first is whether the 1969 Supreme Court decision in *Container Corporation of America* should have put Kraft on notice of its rights, thus precluding its argument that fraudulent concealment avoids the statute of limitations. As the district court noted, this issue could be very important. Indeed, the district court observed that the mention of this issue had a great impact on the jury in the class action case against the one defendant who did not settle with the class. The second issue is the *in pari delicto* defense raised by Container. The district court found that "antitrust counseling with respect to Kraft Foods Division's purchasing activities was within the scope of Chadwell's representation."

Container has three arguments regarding the district court's Canon 4 analysis. First, Container argues that the district court did not make sufficient findings of fact regarding the "substantial relationship" between the issues in the present litigation and the prior representation of Kraft by Chadwell. Second, Container faults the district court for failing to specifically find that any Chadwell lawyer had given Kraft advice on either of the two issues. Third, Container argues that since every Chadwell lawyer has sworn that he did not give Kraft advice on these matters, any presumption of confidences which might be proper in other factual situations is inappropriate here, or, if appropriate, is rebutted.

Container does not dispute the findings that Chadwell's representation of Kraft prior to 1973 embraced antitrust counseling and Kraft's purchasing practices, and that the interrogatories served on Kraft inquire into these areas. The affidavits of the Chadwell lawyers purport to show that none of the present lawyers gave advice or received information regarding those matters. Container takes pains to point out that the main Chadwell lawyers

---

**4.** There is some movement towards abandoning the amorphous standard of Canon 9 as a test for disqualification. *See* Developments in the Law—Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1326–28 (1981). Our use of Canon 4 to inform our Canon 9 analysis avoids any possible harshness that

might come from applying Canon 9 in the abstract.

**5.** The district court's order also applies to 17 other opt-out actions. At this point in the analysis, we concentrate on Kraft's opt-out action.

responsible for this advice left the firm in 1970 and 1973. This makes no difference since knowledge is imputed to partners of the lawyer disqualified, even if the partnership is later dissolved, as it was here as between the departing and remaining partners. *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128–1129 (5th Cir. 1971); *see also Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1321 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978).

 Container's complaint is that the district court failed to explain how that advice would be relevant or substantially related to this action. The advice does not need to be "relevant" in the evidentiary sense to be "substantially related." It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved. The existence of a "substantial relationship" between Container's interrogatories about Kraft's purchasing practices and Chadwell's representation of Kraft which included the subject matter of purchasing practices is self-evident. Perhaps this is why the district court did not explain its conclusion that a substantial relationship existed. Where parts of the present action and the past representation concern the very same subject matter, reasonable minds must agree they are substantially related.

Container's second argument is that in light of the great harm it will suffer if the Chadwell firm is disqualified and the uniqueness of the facts present here, an exception should be made to the "substantial relationship" presumption and actual proof that confidences were given by Kraft to the Chadwell Firm should be required. While this case is factually unique, such uniqueness does not work in favor of Container's argument. This circuit has dealt with many motions to disqualify. We have not found any case decided in this circuit or elsewhere where the relationship between the movant and the firm sought to be disqualified has been one of such long-standing closeness in the same field of representation as the relationship between the Chadwell Firm and Kraft. More importantly, the precedents of this circuit do not indicate that even great prejudice to the party whose attorney is disqualified would warrant departure from the substantial relationship standard.[6]

Container's third argument is that the presumption that confidences had been given by Kraft to the Chadwell Firm has been rebutted in this case because every Chadwell lawyer has submitted an affidavit swearing that he or she did not give Kraft advice on these matters. That raises a question not decided before in this circuit, to wit, whether the presumptions that arise under the substantial relationship test are rebuttable.

 As the Seventh Circuit has noted, there are two presumptions to be dealt with. The first is that confidential information has been given to the attorney actually doing work for the client. The second is that the attorney shared the information with his partners. *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 196 (7th Cir. 1979). This circuit has exhibited reluctance to apply the latter presumption repeatedly to disqualify new partners of an attorney vicariously disqualified by virtue of his former partners' representing certain clients. *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir. 1971). The Second Circuit refused to disqualify an attorney who had a short association with a large law firm when he represented an adversary of one of his former firm's clients. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 753–54 (2d Cir. 1975), *overruled on appealability issue, Armstrong v. McAlpin*, 625 F.2d 433, 440 (2d Cir. 1980), *vacated*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). While this presumption of imputed knowledge may be unduly harsh in some circumstances, it is not here. Kraft is Chadwell's oldest client. The fees gener-

**6.** In this regard we note Container has had separate counsel taking part in its representa-tion for a substantial period of time.

ated by work for Kraft indicate that it is a substantial client. Though the attorneys who worked most closely with Kraft during the period in question have now left the Chadwell Firm, imputing their knowledge to those partners remaining in the firm presumes only that which makes lawyers associate themselves in a shared practice of their profession. Among partners and regarding a long-time substantial client, this single-imputation rule cannot be rebutted.

■ We now return to the first presumption, that confidences were given by the client to the attorney. One of the first articulations of that presumption was in *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y.1953). In granting the motion to disqualify based on Canon 6 of the Canons of Professional Ethics (which have been superseded by the Code of Professional Responsibility), the court stated:

> [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

*Id.* at 268–69. In that case, the only issue was what the movant had to show. Thus, there was no occasion for the court to determine whether the presumption was rebuttable. Several decisions of this court have cited *T.C. Theatre Corp.* approvingly. *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977); *American Can Company v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir. 1971). In *Wilson P. Abraham* this court said:

> This rule [the substantial relationship rule] rests upon the presumption that

confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation. The Court may not even inquire as to whether such disclosures were in fact made or whether the attorney in fact is likely to use the damaging disclosures to the detriment of its former client . . . . The inquiry is limited solely to whether the matters of the present suit are substantially related to matters of the prior representation, and this is because this Court recognizes that in order to aid the frank exchange between attorney and client, it is necessary to preclude even a possibility that information given in confidence by a former client will ever be used without that client's consent.

*Id.* at 252. From the statements in these cases, it is evident that the presumption arising under the substantial relationship test is not the ordinary type of presumption that is intended to obviate the need for proof where proof would be difficult. Instead, this presumption is intended to prevent proof that would be improper to make. The presumption avoids compelling the former client to prove the very things that he seeks to keep confidential. If the presumption were rebuttable, that is, if the attorney could attempt to prove that he did not recall any disclosure of confidential information, or that no confidential information was in fact disclosed, this could also defeat the purpose of keeping the client's secrets confidential. The confidences would be disclosed during the course of rebutting the presumption by the attorney, or if the presumption was considered rebutted, the client might again be put into the anomolous position of having to show what confidences he entrusted to his attorney in order to prevent those confidences from being revealed. We conclude the presumption of disclosure is not susceptible of rebuttal by proof. *Accord, Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 197 (7th Cir. 1979); *Arkansas v. Dean Food Products Co.*, 605 F.2d 380, 384 (8th Cir. 1979), *overruled on appealability issue, In re Multi-Piece Rim Products Liability Litigation*, 612 F.2d 377

(8th Cir. 1980), *vacated sub nom., Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).

 Thus, the first part of the Canon 9 test has been met. The specifically identifiable impropriety that very probably has occurred or will occur is the breach of Canon 4, just discussed. We must also determine whether the likelihood of public suspicion outweighs the social interest in Chadwell's continued representation of Container. *Woods,* 537 F.2d at 813. *Brennan's* described the social interest to be "retaining counsel of one's choice." 590 F.2d at 172. That is the only social interest advanced by Container. Container also urges us to weigh the harm to it in this balance. We decline to do so. Canons 9 and 4 do not contemplate comparing the relative harm to the former and present clients. This part of Canon 9's test is designed to weigh social interests against each other. Though the protection of the right of a civil litigant to counsel of his choice is important, that social goal is outweighed here by the likelihood that the image of the legal profession would be tarnished by the continuance of this relationship.

Container makes a series of arguments that Kraft has consented to the representation it now opposes, has waived its right to object, and should be estopped from seeking disqualification. Container argues that the failure of Kraft to object to Chadwell's participation in the Folding Carton litigation undermines its entire case for disqualification in the Corrugated Container litigation. Container cites several cases for the proposition that consent is sufficient to defeat a motion to disqualify under Canon 5, but says nothing about whether consent is a defense to a Canon 4 or Canon 9 motion. The consent argument concerns the representation in the Folding Carton litigation and Kraft's initial statements in this litigation that they had no objection to Chadwell's representation of Container. Container claims that Kraft has changed its position since the meeting on December 7, 1979. The waiver argument concerns the fact that other Kraft lawyers made representations to the Judicial Panel on Multidistrict Litigation that the conflict situation

had been resolved. These representations were made in connection with the motion to consolidate the cases in Houston. Container also argues that Kraft is not adversely affected by the concurrent representation.

 This circuit has not ruled on the viability of the doctrines of consent, waiver, and estoppel under the Code of Professional Responsibility. Our resolution in the present case relates to Canon 9 only. To the extent that Container's argument centers around Kraft's delay in seeking the disqualification of the Chadwell Firm, *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir. 1973), is apt. In response to an argument that the motion to disqualify counsel was barred by the doctrine of laches, that court stated: "Since, as we have noted, disqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility." *Id.* at 574. Consent may justify disclosure of confidences under Disciplinary Rule 4–101(C)(1), but, as the Seventh Circuit has held, simple consent to adverse representation is not a consent to the use of confidential information. *Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 229 (7th Cir. 1978). Moreover, Kraft did not delay its motion to disqualify in the Corrugated Container litigation; the asserted delay was in the Folding Carton litigation, a similar but distinct lawsuit.

 Our cases indicate that disqualification is a matter of ethical, not legal, considerations, *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1127 (5th Cir. 1971), and that, particularly in cases involving Canon 9, the interest of the client is not the only consideration. Indeed, part of our test for disqualification under Canon 9 calls for a weighing of the likelihood of public suspicion. *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172 (5th Cir. 1979); *Woods v. Covington County Bank,* 537 F.2d 804, 812–13 (5th Cir. 1976). While in some circumstances the client may be able to consent to or waive his objection

regarding a violation of Canon 4 or Canon 5, the client may not, by delay or any other action, remove from the court the responsibility of weighing the likelihood of public suspicion of the legal profession when Canon 9 is involved. There may be some situations where the client has so clearly consented that disqualification would raise more public suspicion than it would quell. We hold only that in this case, Container has shown us nothing by way of consent, waiver, or estoppel that should bar Kraft's assertion that the Chadwell Firm cannot represent its antagonist.

Finally, Container argues that the Chadwell Firm should not have been disqualified from the seventeen other opt-out cases currently pending in the district court. The district judge did not address this issue in his written order, but a transcript of the proceedings held before him indicates that he ordered disqualification in all the opt-out cases because he was, and perhaps still is, contemplating consolidation of all the opt-out cases for trial, and he considered it impractical to disqualify the Chadwell Firm in just one of those cases. Neither party on appeal has cited persuasive authority to either reject or affirm this ruling of the district court. A decision to consolidate the cases would rest within the district court's discretion, *Whiteman v. Pitrie*, 220 F.2d 914 (5th Cir. 1955). Since the order disqualifying the Chadwell Firm in all the opt-out cases depends upon the exercise of this discretion, we affirm this part of the district court's order contingent upon consolidation. Should the district court decide not to consolidate these cases for trial, Container may move for reconsideration of the portion of the order relating to the other seventeen opt-out cases. We express no view on the outcome of that possible motion.

In sum, we hold that the district court properly disqualified the Chadwell Firm from representing Container in the Kraft action because Kraft properly established the appearance of professional impropriety forbidden by Canon 9. Insofar as the disqualification extended to other opt-out

cases, the district court's ruling may be subject to further proceedings on remand.

The discovery process stay order previously entered and extended is again extended until 10 days after the mandate of this court is received by the district court.

The judgment of the district court is AFFIRMED.