**HYDRIL COMPANY, Plaintiff,**

v.

**MULTIFLEX, INC., Jesse Milton Morton, and James Arnold Williams, Defendants.**

**Civ. A. No. H–82–2673.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 8, 1982.

Alan D. Rosenthal, Baker & Botts, Houston, Tex., for plaintiff.

B.R. Pravel, Pravel, Gambrell, Hewitt, Kirk & Kimball, Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

Pending before the Court is plaintiff's motion to disqualify the law firm of Pravel, Gambrell, Hewitt, Kirk & Kimball ("Pravel firm") and its various members who are representing defendants in this cause. Plaintiffs contend that this representation violates Canons 4 and 9 of the Texas Code of Professional Responsibility (Tex.Rev.Civ. Stat. Title 14, App., Art. 12, § 8). For the reasons stated herein, the Court finds that the plaintiff has failed to sustain its burden of proving a violation of either Canon 4 or Canon 9 and therefore its motion to disqualify is DENIED.

On September 14, 1982, plaintiff filed its complaint alleging that defendants have (1) misappropriated confidential information, (2) engaged in unfair competition, and (3) tortiously interfered with its contractual relations with its employees. Plaintiffs' complaint further alleges that the activities of the individual defendants, Jesse M. Morton and James A. Williams, are in breach of their employment agreements with Hydril. Plaintiff seeks to disqualify the Hydril firm from representing defendants in this case on the ground that its prior representation of Hydril Company is substantially related to the subject matter of the present litigation. Plaintiff argues first that the Pravel firm has represented Hydril in the general area of protection of intellectual property and, second, that the Pravel firm's representation of Hydril with respect to the patent of its "Flexpak" encapsulated control lines (see U.S. Patent No. 3,844,345 and the entries at pages A–1 and A–91 of Plaintiff's Appendix) requires their disqualification. Plaintiff also contends that the obtaining of registration for the "Flatpak" (and the "Flexpak") is substantially related to this lawsuit. In addition to its claim that there is a "substantial relationship" between the Pravel firm's previous representation of Hydril and the issues raised in this present action that would constitute a violation of Canon 4, plaintiff argues that Canon 9 is violated by Pravel's representation.[1] Finally, plaintiff argues that when read together, Canons 4 and 9 provide that an attorney may be required to withdraw from a case where there exists even an appearance of a conflict of interest.

The facts pertinent to this action are in large part undisputed. Defendants' present counsel, the Pravel firm, began representing plaintiff in 1970. This representation ended in January of 1982, when the Pravel firm's files on Hydril matters (other than billing records) were delivered to Mr. John H. Dodge, II, a former member of the Pravel firm. A review of the attorney time slips made available by the Pravel firm indicate over the ten year period a number of the firm's attorneys have performed a variety of legal assignments on behalf of Hydril. Since 1974, however, the attorney in charge of the Hydril account was Mr. Dodge, who was responsible for billing and supervising all of Hydril's work with the Pravel firm. The Pravel firm has represented Multiflex, Inc., in various matters since April of 1978, and Mr. Pravel alone has personally billed and recorded about 1,450 hours from April 1978 through June of 1982, as lead counsel for Multiflex.

With respect to the first prong of the claim of "substantial relationship", e.g., Pravel's representation of Hydril in its protection of its intellectual property, plaintiff has directed the Court to review various billing records by the firm.[2] The Court has

---

1. 
   Canon 4

   A Lawyer Should Preserve the Confidences and Secrets of a Client

   Canon 9

   A Lawyer Should Avoid Even the Appearance of Professional Impropriety

2. Plaintiffs' counsel have argued in their brief and at oral argument that the Court should generally look at the long history of the Pravel firm's representation of Hydril. The Court rejects such a broad brush approach and in keeping with the required allocation of the burden of proof, will consider those specific references

reviewed those specific entries: A–70, A–78, A–81, A–84, and A–85 of the Appendix filed by the plaintiff. Plaintiff has also directed the Court's attention to other entries relating to the second prong of its contention of "substantial relationship", e.g., advice to Hydril with respect to its encapsulated control line products. (See, entries at pages A–1 and A–91 of the Appendix filed by plaintiff.) With respect to its argument that Canon 9 has been violated by the Pravel firm, as previously stated, plaintiff argues that Canons 4 and 9 must be read together and when so construed, the Pravel firm must be required to withdraw from this case because there is "an appearance of a conflict of interest." Citing, *Cameron Ironworks, Inc. v. Hydril Co.,* 208 U.S.P.Q. 672, 673 (S.D.Tex.1980).[3]

The legal standards to be applied in considering a motion to disqualify an attorney or law firm are clear and easily stated; their application to the factual circumstances in a given case is more difficult and a close analysis of the evidence supporting such a motion is critical.

*Canon 4*

█ The law in the Fifth Circuit regarding disqualification of an attorney(s) (or law firm) appearing on behalf of a former client is well settled. First, the movant must show that an attorney-client relationship between the movant and the attorney exists or existed. *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1129 (5th Cir.1971). There is no dispute that the Pravel firm represented the Hydril Company on a variety of legal matters. Once this has been shown, the movant need only show that the matters in which the attorney previously represented its former client are substantially "related" to the pending litigation. *Brennans, Inc. v. Brennans Restaurant, Inc.,* 590 F.2d 168, 171 (5th Cir.1979); *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,* 559 F.2d 250, 252 (5th Cir.1977); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976); *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1129 (5th Cir.1971). The party seeking disqualification is not required to point to specific confidences or to detail the specific confidences revealed by the client to his former attorney that are relevant to the pending case. The "advice" does not need to be "relevant" in the evidentiary sense to be "substantially related". It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved. *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1346 (5th Cir.1981). However, the inquiry in determining whether or not the present litigation is substantially related focuses on the precise nature of the relationship between the present and the former representation. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020 (5th Cir.1981). But, "when deal-

---

upon which plaintiff relies to support its contention of "substantial relationship".

**3.** Here, Hydril successfully obtained the disqualification of a former partner of the Pravel firm in a totally different situation from the case at bar. In that suit, the subject matter was a sheer seal ram. The firm in which that attorney, Guy E. Matthews, was then a partner, brought this suit on a patent owned by Cameron Ironworks on a sheer seal ram against Hydril for infringement of that patent. It was established that Matthews was in the Pravel firm when the specific Hydril sheer seal ram was studied and an infringement opinion was rendered with respect to the Cameron patent. Thus, since the subject matter of the patent infringement suit was identical to the subject matter of that lawsuit, there was clearly a con-

flict, which Judge Seals properly found was sufficient to disqualify Matthews from representing Cameron Ironworks in that litigation. In each of the cases relied upon by the Court to support its assertion that "read together, the two Canons indicate that an attorney may be required to withdraw from a case where there exists even an appearance of a conflict of interest", *Cameron Ironworks, Inc., supra* at p. 673, there was a finding of a "substantial relationship" between the prior representation of the attorney who was disqualified and thus a violation of Canon 4. This Court must first face the threshold issue of whether the plaintiff has established such a Canon violation in this case and these cases do not lend support for the resolution of that issue.

ing with ethical principles, ... we cannot paint with broad strokes. [T]he lines are fine and must be so marked.... The conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent." *Duncan, supra,* at 1028. The standards for considering a disqualification motion are not to be mechanically applied in this circuit. *Church of Scientology of California v. McLean,* 615 F.2d 691, 693 (5th Cir.1980). Only when the moving party delineates with specificity the subject matter, issues, and causes of action presented in former representation should the district court determine that the substantial relationship test has been met. Plaintiff has failed to establish such a relationship.

Merely stating that the previous representation of the Pravel firm involved advice about the protection of intellectual property in the areas of trade secrets, patents, and trademarks does not provide this Court with sufficient information on which to engage in a "painstaking analysis of the facts." This litigation charges that confidential information and trade secrets of plaintiff Hydril with respect to the manufacture of its "Flatpak" encapsulated control lines which has a larger number (ten) of stainless steel tubes and two wire ropes enclosed in the sheath of thermal plastic material was misappropriated by the two individual defendants. A stipulation has been entered into between the parties in this case in which Hydril acknowledges that it did not manufacture the "Flatpak" encapsulated control lines until after November 1978. Therefore, the subject matter which Hydril claims to be confidential information and trade secrets with respect to the manufacture of its present ten tube, two wire rope product, could not possibly have been disclosed to the attorneys who prepared the two tube, no wire rope patent applications in 1971 and 1973. Thus, the Pravel firm's advice to Hydril concerning the protection of its trade secrets, could only relate to the product that it was manufacturing at that time and during that period of representation, Hydril had not yet developed the "Flatpak" at that time.

Dodge's representation in obtaining a registration of the trademark and any knowledge that he may have gained is irrebuttably imputed to the Pravel firm. If this was a trademark infringement case, obviously this would involve switching sides, for knowledge gained might put the Pravel firm in an unfair, superior position in defending a client charged with trademark infringement. It is argued that there is a resemblance between general representation regarding the protection of intellectual property with the instant case, for plaintiff charges a breach of the confidentiality obligations owing Hydril by the individual defendants. The Court recognizes that representations need not be identical, but they must be more than a "superficial resemblance". *See Duncan, supra* at p. 1029.

Plaintiff contends that there is a substantial relationship between the prior representation by the Pravel firm and this present suit since both involve encapsulated control lines. However, upon a closer focus, it is apparent that the products are significantly different. At the oral hearing on October 5, Mr. William C. Slusser, one of the attorneys for Hydril, represented to the Court that there was a vast difference in the manufacturing process procedures, techniques and equipment which Hydril developed for making the "Flatpak" with the ten tubes as compared to making it with two tubes. Plaintiff's brief points to Patent No. 3,844,345 as a basis for the disqualification of the Pravel firm. The Court concludes that the application for the patent for the two tube encapsulated control lines and the entries at pages A–1 and A–92 in the Appendix are not substantially related to the present litigation. There is absolutely no basis for Hydril to contend that the subject matter Patent No. 3,844,345 is substantially related to the alleged trade secrets and the manufacturing techniques and processes used by Hydril in making the "Flatpak" with ten stainless steel tubes. Further, the Court finds that Patent No. 3,844,345 was filed originally in the Patent Office on September 17, 1971, and was later refiled on June 1, 1973. Hydril did not begin to man-

ufacture the "Flatpak" encapsulated control lines until after November 1978. This suit involves the alleged misappropriation of confidential manufacturing techniques. It is absolutely clear, however, that any manufacturing technology or information developed by Hydril more than five years after the filing of patent No. 3,844,345 could not possibly have been disclosed to Mr. Hewitt, Mr. Dodge, or anyone else in the Pravel firm at the time the patent applications were filed. Therefore, the Pravel firm's participation in preparing the application for the patent cannot support any inference or presumption of confidential information with respect to the subject matter of the present lawsuit passing to the Pravel firm. This lawsuit does not involve that patent in any way. This is not a patent infringement suit. The subject matter of the patent application could not possibly involve any of the information that is alleged to be confidential and the trade secrets Hydril developed after November of 1978.

During oral arguments, plaintiff's counsel pointed to a number of instances in which the Pravel firm represented Hydril in the preparation of trademark applications for "Flexpak" and "Flatpak". This Court notes the argument made by defendant in his brief and not denied by plaintiff, that it is absolutely unnecessary to know anything about the manufacturing technology of a product in order to apply for and obtain trademark registrations. There is nothing in the time slips and there is no other evidence in the record before the Court, which would indicate that anyone in the Pravel firm knew anything about the manufacturing technique or alleged confidential information and trade secrets with respect to the manufacture of the "Flatpak" encapsulated control line products. This conclusion is further strengthened by the affidavit submitted by defendants denying any information or knowledge concerning the manufacturing processes, techniques or equipment used by Hydril to manufacture its encapsulated control lines. (See Defendants' Affidavits attached to Defendants' Brief and Memorandum in Opposition to Plaintiff's Motion to Disqualify Defendants' Counsel).

Finally, plaintiff argues that the Pravel firm's representation which is being challenged in this case is unique in that it is not aware of any case in which the challenged firm has so recently and pervasively represented its former client over such a period of years. (See Plaintiff's Reply to Defendants' Brief and Memorandum in Opposition to Plaintiff's Motion to Disqualify, at pp. 8 and 9.) *In re Corrugated Container Antitrust Litigation, supra,* is such a case and there, the court rejected an argument that an exception should be made to the "substantial relationship standard" because of a long-standing relationship between a law firm and its prior client. The court refused to make such an exception and held fast to the recognized standard. *In re Corrugated Container Antitrust Litigation, supra,* at 1346. Plaintiff summarizes its position by asserting

> At the very least, the Pravel Firm's prior representation of Hydril was "substantially related" to potential issues in the present suit. That is *all* that the Fifth Circuit requires that the plaintiff show to obtain disqualification. Denial of plaintiff's motion to disqualify the Pravel firm would condone, if not encourage, conduct which clearly appears to be improper. Plaintiff's Reply Memorandum at p. 9.

Plaintiff has also argued that because the case is in the initial stages, some of the issues may not have been crystallized and therefore it is even more important to disqualify the Pravel firm at this stage. To the contrary, the Court considers such posture of the case militates against disqualification. A potential conflict based on potential issues is simply not the standard.

*Canon 9*

■ The second ground relied upon by Hydril for disqualification of the Pravel firm is Canon 9 of the Texas Code of Professional Responsibility. The Court recognizes that under Canon 9, "the rule of disqualification is not mechanically applied in this circuit." *Church of Scientology of Cali-*

*fornia v. McLean,* 615 F.2d 691, 693 (5th Cir.1980). The Court also recognizes the admonition of *In re Corrugated Container Antitrust Litigation,* 659 F.2d at 1345, n. 4:

> There is some movement towards abandoning the amorphous standard of Canon 9 as a test for disqualification. See *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harvard L.Rev. 1244, 1326–28 (1981). Our use of Canon 4 to inform our Canon 9 analysis avoids any possible harshness that might come from applying Canon 9 in the abstract.

In analyzing the applicability of Canon 9 to the instant case, this Court is guided by the language of the Fifth Circuit in *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir.1976). In *Woods,* the Fifth Circuit concluded that to warrant disqualification under Canon 9 of the Code, "[t]here must be a showing of a reasonable possibility that some specifically identifiable impropriety occurred and the likelihood of public suspicion." In focusing upon the first prong of the *Woods* test, whether there has been a showing that there is a reasonable possibility that some specific impropriety has in fact, or will in fact, occur, this Court cannot clearly discern what specific impropriety defendants' counsel is in danger of violating or has violated. Plaintiff argued that the presumption that Mr. Dodge shared information with the other members of the Pravel firm after he took over total responsibility for that client is rebuttable, in fact, the Fifth Circuit has held that "among partners and regarding a long time substantial client, this single—imputation rule—cannot be rebutted." *In re Corrugated Container Antitrust Litigation,* 659 F.2d at 1347. The Court has found, however, that Hydril has yet to establish a substantial relationship between Pravel firm's former representation of Hydril Company and the present litigation both pre-November, 1978 and post-November, 1978. Because the plaintiff failed to prove an impropriety, a Canon 9 violation cannot be premised on this ground. Second, Hydril alleges that an appearance of impropriety was created when the Pravel firm sought to represent Multiflex, Inc., in this suit filed by Hydril because of the firm's long history of representing the Hydril Company.

In applying the second prong of the *Woods* test to the instant case, the Court must determine whether the likelihood of public suspicion outweighs the social interest in the Pravel firm's continued representation of Multiflex. The Court is fully aware that the standard of review forecloses a weighing of the relative harm under Canons 4 and 9 to the former and present client. *In re Corrugated Container Antitrust Litigation,* 659 F.2d at 1348. This aspect of the Canon 9 test is designed to weigh competing social interests against each other. In this case, the likelihood that the image of the legal professional will be somehow undermined or tarnished by the continuance of this relationship, is not outweighed by the right of a civil litigant to counsel of his choice. As previously noted, Mr. Pravel has represented Multiflex since April of 1978. For the same reasons discussed above in the Court's analysis of Canon 4, the Court is unwilling to disqualify counsel from representing Multiflex, Inc., and the other defendants, simply because Hydril Company was his former client and there *might* be a conflict of interest. See *Woods v. Covington County Bank,* 537 F.2d 803, 813 (5th Cir.1976). This Court agrees with the observation made by the Fifth Circuit in *Woods* that an overly broad application of Canon 9 would be self-defeating if a litigant is delayed or otherwise disadvantaged by the unnecessary disqualification of his attorney under the impropriety doctrine. *Id.* at 813. This is not to suggest that the Court is not acutely sensitive to upholding the image of the legal profession. The Court shares the general concerns expressed by the Honorable James Noel in *E.F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 382 (S.D.Tex.1969). Certainly the Pravel firm's long representation of Hydril should be closely scrutinized by this Court. The evidence adduced by the plaintiffs has been carefully considered and the Court finds that the plaintiff has failed to sustain its burden and thus must deny the motion to

disqualify. However, this Court has closely considered the Fifth Circuit's admonition in *Duncan, supra* and will not improperly place the burden on the defendant Pravel firm to demonstrate that its representation is unrelated, but instead must hold fast to the standards enunciated by the Fifth Circuit and place the burden on the plaintiff to demonstrate a substantial relationship and the possibility of a specifically identifiable impropriety. This the plaintiff has failed to do. Therefore, it is

ORDERED, ADJUDGED, and DECREED that plaintiff's Motion to Disqualify Counsel is hereby in all respects, DENIED.