**CARBO CERAMICS, INC., et al.**

v.

**NORTON–ALCOA PROPPANTS, et al.**

Civ. A. Nos. 3–89–CV–3075–
X, 3–92–CV–1400–X.

United States District Court,
N.D. Texas,
Dallas Division.

March 9, 1994.

B.R. Pravel, James H. Riley, II, Pravel, Grambrell, Hewitt & Kimball, Houston, TX, for Carbo Ceramics, Inc. and A/S Niro Atomizer.

Michael O. Sutton, Albert B. Deaver, Jr., Jon R. Trembath, Fish & Richardson, Houston, TX, for Norton–Alcoa Proppants, Norton Proppants, Inc. and Alcoa Proppants, Inc.

Graham Kerin Blair, Verner, Liipfert, Bernhard, McPherson & Hand, Houston, TX, for Michael O. Sutton and Fish & Richardson.

*ORDER*

SANDERSON, United States Magistrate Judge.

Pursuant to the District Court's order of reference filed on November 23, 1993, on February 23, 1994, came on to be heard Plaintiffs' Motion to Disqualify Defendants' Counsel filed on November 22, 1993, and having considered the evidence presented, the relevant briefs of the parties and the arguments of their counsel, the court finds and orders as follows:

*HISTORY OF THE CASE:*

On December 6, 1989, Plaintiffs Carbo Ceramics, Inc. and A/S Niro Atomizer (hereinafter referred to as Carbo) filed their complaint against Norton–Alcoa Proppants, Norton Proppants, Inc. and Alcoa Proppants, Inc. (hereinafter referred to as Norton–Alcoa) in this court, which was docketed in CA3–89–3075–R and assigned to the Hon. Jerry Buchmeyer.

On June 1, 1992, the above action was reassigned to the Hon. Joe Kendall. Thereafter Judge Kendall consolidated a subsequently filed complaint docketed in No. 3–92–CV–1400–X with CA3–89–3075–X and administratively closed 3–92–CV–1400–X.

On October 29, 1992, Judge Kendall entered a scheduling order which in pertinent part imposed a discovery deadline of May 31, 1993, required the proposed pretrial order to be filed by July 19, 1993, with a jury trial setting for August 2, 1993. On the same date the court ordered the parties to mediation.

On June 8, 1993, an amended scheduling order was entered requiring the proposed pretrial order to be filed by August 23, 1993, and resetting the trial for September 7, 1993. Between the dates of August 23, 1993 and September 3, 1993, the parties filed numerous pleadings, including those required under the District Court's scheduling order and the Local Rules as well as various motions to exclude specific categories of evidence (See Items 226 through 290 listed on the docket sheet).

The case was not tried on September 3, 1993 and on September 15, 1993, Judge Ken-

dall filed a written order rescheduling the case for jury trial on November 4, 1994.

## THE INVOLVEMENT AND PARTIC- IPATION OF BENJAMIN ADLER:

Since Plaintiffs' motion relates solely to the activities and employment of Benjamin Adler, it is appropriate to set out the facts of his work history and activities as they relate to the present action. The facts are largely undisputed[1] and are set out briefly and are amplified hereinafter as necessary.

While attending the Boston University School of Law, Mr. Adler was employed as a law clerk and summer associate at the Boston office of Fish & Richardson from January 1989 to July 1989 (Defendants' Hearing Exhibit 11). Following a second law clerk position, he accepted a position with Pravel, Gambrell, Hewitt, Kimball & Kreiger, the predecessor to Plaintiffs' present counsel in June 1990 (Id.). On November 2, 1990, Adler was licensed to practice law by the Supreme Court of Texas (Defendants' Hearing Exhibit 36—Deposition of Benjamin Adler at pages 110–111).

While employed at the Pravel law firm Adler billed 216.5 hours of time for work performed for Carbo between June 15, 1990 and July 22, 1991 (Plaintiffs' Hearing Exhibit 2—Affidavit of James H. Riley II and attachments).

In August 1991 Adler left the Pravel firm to accept employment as an associate with Fulbright & Jaworski's Houston office (Defendants' Hearing Exhibit 11). Prior to accepting employment a member of the Fulbright & Jaworski firm contacted a partner at the Pravel firm to insure that his employment would not create a conflict with regard to common clients (Defendant's Hearing Exhibit 36—Deposition of Benjamin Adler at pages 204–205).

In the summer of 1993 Adler was contacted by Gail Kaplan regarding the possibility of employment at the Fish & Richardson firm's Houston office. Following this contact Adler met with Fish & Richardson attorneys.

The fact of his prior employment with the Pravel firm was raised at a dinner meeting in July 1993 attended by Adler and Fish & Richardson attorneys, including Michael Sutton, (Defendants' Hearing Exhibit 2—Affidavit of Michael O. Sutton at ¶ 15.C–D). Although the recollections of Mr. Sutton and Mr. Adler are not congruent in all respects, the evidence does show that Adler did not disclose the specifics of the work he performed on the present case at the Pravel firm and that the Fish & Richardson attorneys were left with the impression that his work product at the Pravel firm was on "generic" matters, rather than on substantive issues.

Approximately a week after the dinner meeting Mr. Sutton extended a job offer to Mr. Adler. Adler accepted the offer, but did not join Fish & Richardson's Houston office until October 4, 1993 (See Defendants' Hearing Exhibit 2, Attachment A—Affidavit of Benjamin Adler at ¶ 4).

On November 1, 1993, James H. Riley II wrote Mr. Sutton informing him that Adler had billed in excess of 200 hours in this case while at the Pravel firm and advised him that Plaintiffs were going to file a motion to disqualify Sutton and his law firm from further representation in the case (Plaintiffs' Hearing Exhibit 1).

On November 2, 1993, Mr. Sutton sent a memo to all Fish & Richardson attorneys informing them that Mr. Adler was being "Chinese-walled" and gave instructions for all employees to follow (Plaintiffs' Hearing Exhibit 3). At the same time Sutton sent a memo to Mr. Adler instructing him not to have any contact with anyone in the firm regarding the case (Plaintiffs' Hearing Exhibit 4).

Following consultation with outside counsel, Fish & Richardson terminated Mr. Adler's employment on December 3, 1993.

During the time that Adler was employed at Fish & Richardson he did no work on this case, never had access to any materials with

---

**1.** Plaintiffs argue that under the Fifth Circuit's holding in *In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir.1992) cert. denied *sub nom. Northwest Airlines v. American Airlines*, —— U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993), irrebuttable presumptions arise which bar the court from making any findings of fact which would otherwise constitute rebuttal evidence.

regard to this action and was never asked to divulge any information regarding the case, nor did he disclose any information which he had obtained while employed at the Pravel firm.[2]

*THE APPLICABLE LAW:*

■ Under the established precedents of this Circuit, motions to disqualify counsel are determined by applying federal law which may be informed by state and national standards as a federal court in its discretion sees fit to apply. e.g. *In re American Airlines, Inc.*, supra at 610; *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir.1992). Of course, it goes without saying that the court's discretion is circumscribed by Fifth Circuit law explicating the standards to be applied.

■ Where an issue of prior representation is involved, the Fifth Circuit applies a substantial relationship test, to wit:

"A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." *In re American Airlines*, supra at 614 (Citations omitted).

The task of deciding whether a substantial relationship exists—frequently a daunting and difficult task, e.g. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 173–74 (5th Cir.1979); *Hydril Co. v. Multiflex, Inc.*, 553 F.Supp. 552, 554 (S.D.Tex. 1982)—is not present in the instant motion since the representation at issue relates to the same lawsuit.

Plaintiffs argue that under the Fifth Circuit's decision in *In re American Airlines*, supra and *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341 (5th Cir. 1981), their motion must be granted because the presumptions that Mr. Adler received relevant confidential information while employed with the Pravel firm and that he transmitted such information to the Fish & Richardson firm are irrebuttable.

In considering Plaintiffs' argument it is equally important to take cognizance of the Fifth Circuit's directives that "the rule of disqualification is not mechanically applied in this Circuit." *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir.1981) citing *Brennan's, Inc.*, supra at 173–74. Cf. *Lemaire v. Texaco, Inc.*, 496 F.Supp. 1308, 1310 (E.D.Tex.1980).

Were this court to apply the substantial relationship test on a purely mechanical level, it is clear that Plaintiffs' motion would be rendered moot since the "offending attorney" is no longer associated with the Fish & Richardson firm. However, such an application would be contrary to the law of this Circuit. Rather the court must make a discerning review of the operative facts and apply the appropriate federal law.

The holding in *American Airlines* does not compel the application of irrebuttable presumptions in the present case. The facts there considered are readily distinguishable from those presented under the instant motion. In *American Airlines* the firm of Vinson & Elkins previously represented American Airlines and was seeking to represent an adversary of its former client. In the present case the court is not confronted with a "client switching" situation, but with a "migrating attorney" whose confidential knowledge is imputed to the members of the second firm. *American Airlines* involved antitrust litigation whereas the present action is a patent infringement action. This distinction is not irrelevant since the Court of Appeals for the Federal Circuit has held that the imputed shared confidences within a firm may be rebutted, if the opposing party proves that no confidences were, in fact, divulged. *Panduit Corp. v. All States Plastic Manufacturing Co., Inc.*, 744 F.2d 1564, 1578–79 (Fed.Cir.1984)—citing the Fifth Circuit's decision in *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir.1971).

**2.** The unrefuted affidavits and/or declarations of everyone with knowledge at the Fish & Richardson firm, both in Houston and at its other branches and the testimony of Mr. Adler show the absence of any involvement by Mr. Adler upon joining the firm as an associate (See Defendants' Hearing Exhibits 2, 3, 4, 6, 7, 8, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 30, 32 and 37; see also Defendants' Hearing Exhibit 36—Deposition of Benjamin Adler at pages 72, 89).

Both the *Restatement (Third) of the Law, The Law Governing Lawyers* (Tent.Draft. No. 4, 1991)[3] and Texas State Bar Rules[4] address ethical issues relating to the imputed knowledge of a migrating attorney. Neither of these sources was addressed by the Court in *American Airlines* for the obvious reason that the pertinent facts did not involve a single attorney who changed his firm association. Under such circumstances it is not appropriate to infer that the Fifth Circuit would apply a rule of law inconsistent with the promulgated rules on ethical standards. On the other hand this court is not free to decide issues inconsistently with Circuit precedents.

■ The first presumption to be addressed is that which presumes that an attorney obtained confidential information while employed by the firm which represented the party moving for disqualification. See *In re American Airlines*, supra at 614, citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir.) cert. denied, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). The Fifth Circuit's holding that this presumption is irrebuttable is binding on this court. However, even were it assumed *arguendo* that the presumption is rebuttable, Alcoa–Norton would fare no better.

Defendants suggest that because Mr. Adler was a first year associate, that he advised the Fish & Richardson lawyers that his work on the case was "generic" in nature—or words to that effect—that he never met a representative of the Plaintiffs and that his billed hours represented only about 7% of the total amount billed to Carbo that the presumption has been rebutted. However, in contrast to Norton–Alcoa's assertions both the affidavits of James Riley and Mr. Adler and the deposition testimony of Mr. Adler reflect that confidential information was imparted to Mr. Adler.

The experience of any attorney who has represented clients teaches that extremely confidential matters which are privileged may be communicated in a conversation of less than a few minutes, irrespective of whether or not billable time is generated. To require a party to disclose anything more than that reflected in Carbo's evidence, either qualitatively or quantitatively, would create a substantial risk of disclosing the very privileged information which a motion to disqualify seeks to protect.[5] See also *In re Corrugated Container*, supra at 1347.

■ The second presumption to be addressed is that which presumes that confidences obtained by an individual lawyer will be shared with other members of his firm. See *In re American Airlines*, supra at 614, n. 1, and *In Re Corrugated Container Antitrust Litigation*, supra at 1346. As noted by Norton–Alcoa's counsel, the Fifth Circuit in *American Airlines* expressly stated that this presumption was not at issue in that case. In *Corrugated Container* while upholding the presumption, the Court cited its prior opinion in *American Can Co. v. Citrus Feed Co.*, supra, as an expression of its reluctance to disqualify new partners of a vicariously disqualified attorney. The Court then stated: "While this presumption of *imputed knowledge may be unduly harsh* in some circumstances, *it is not here.*" (Emphasis added). The clear import of the Court's language—consistent with the Fifth Circuit's case law—is that the facts in each case will dictate the appropriate result.

An examination of the facts in *Corrugated Container* reflects that they are much more analogous to those in *American Airlines* than those in this action. The disqualified firm had represented the movant for over 30 years and was then representing the movant in other litigation. In the six years preceding the disqualification motion the disqualified firm had been paid in excess of $2 million by the movant. All of the lawyers

---

**3.** See §§ 201 and 204.

**4.** See Texas Gov't Code Ann. Title 2, Subt. G., App. A, art. 10, § 9, Rules 1.06 and 1.09 (Supp. 1993).

**5.** Since Norton–Alcoa has not rebutted the presumption, assuming that it is not irrebuttable, it is unnecessary to consider any possible conflict between *In re American Airlines* and *Panduit Corp.*, supra.

with the disqualified firm except two had done legal work for the movant.

In contrast to the above Mr. Adler was employed by Fish & Richardson for approximately two months. Fish & Richardson has never represented Carbo. In addition, the evidence in this case shows that the Fish & Richardson firm took immediate action—when notified by Plaintiffs' counsel of the possibility of a conflict—to insure that Adler neither transmitted nor received any information about the case. Under the circumstances an irrebuttable presumption of imputed knowledge is *unduly harsh*! It is not contrary to Fifth Circuit law to allow the presumption to be rebutted, particularly where promulgated ethical standards related to imputed knowledge have never been construed or rejected by that Court.

Section 204 of the *Restatement*, supra, expressly removes any restrictions imputed to a lawyer when (1) the personally-prohibited lawyer has been terminated and (2) no confidential information of the client has been disclosed to other affiliated lawyers. See also § 204, Comment c.

The provisions of Texas DR 1.09(a)(2) and (c) are consistent with Section 204. Both are couched in terms of "reasonable probability". In the comments following Rule 1.09 it is stated that "Whether a reasonable probability exists in any given case will be a question of fact" (See Comment 4).

Both provisions contemplate a factual inquiry and the weighing of evidence which clearly are inconsistent with the application of an irrebuttable presumption.

As set out above, it is uncontroverted that Mr. Adler's association with Fish & Richardson terminated on December 3, 1993. Thus the first requirement of Section 204 is satisfied. In seeking to establish the second prong Norton–Alcoa has marshalled the affidavits or declarations of all persons employed by the Fish & Richardson firm who had contacts with Adler, all of which state under oath or penalty of perjury that Adler never conveyed or received any confidential or privileged information with regard to this action. Adler, himself, in both deposition and affidavit has stated that he disclosed no confidential information (See n. 2, supra).

In response to the evidence presented by Norton–Alcoa in support of the second part of Section 204 Carbo argues that it may properly rely on a negative inference that confidential information was disclosed to Fish & Richardson by Adler and suggests that the evidence presented by Defendants is untrue (See Plaintiffs' reply filed on January 18, 1994). Plaintiffs are wrong on both counts!!

Contrary to the statements made in their brief Plaintiffs have not sought relief from the court with regard to discovery with the exception of their motion to compel which the magistrate judge granted in part on February 23, 1994. I have reviewed *in camera* the documents withheld from Plaintiffs. Each is protected from discovery by the attorney-client privilege or the attorney work product doctrine, or both.[6] Further, Plaintiffs were permitted to call Defendants' lead counsel, Michael O. Sutton, as a witness at the evidentiary hearing. Plaintiffs sought the testimony of no additional witnesses prior to the conclusion of the hearing. Accordingly Plaintiffs' request to invoke negative inferences is without merit.

Plaintiffs' second argument attacks the personal integrity of attorneys employed by Fish & Richardson and far exceeds the bounds of permissible advocacy. It is unworthy of pleadings filed by a licensed lawyer. Without citation to any authority Carbo states that the Fifth Circuit has adopted a rule of an irrebuttable presumption because of that Court's recognition that a party opposing a motion to disqualify "could easily conceal the truth" and that the chances of the proponent of the motion being able to ferret out the truth in such circumstances "ranges somewhere between slim and none." The absence of authority is not surprising. Indeed counsel may review the entire body of reported opinions of the Fifth Circuit without finding such an expression of crass cyni-

---

**6.** The documents reviewed *in camera* have been sealed and are made a part of the record in the event of any appellate review.

cism directed against the legal profession and practicing lawyers.

While it is within the realm of possibility that unethical conduct has occurred in this case, it is appropriate to recall another presumption, that is, that a person who makes statements under oath or penalty of perjury is presumed to tell the truth, which is a cornerstone of the resolution of disputes under the "rule of law". Surely no less should be presumed with regard to such statements given by attorneys who in addition have taken an oath to uphold the law as officers of the court. As with most presumptions, this one is also rebuttable. But here Carbo has presented not even a hint of an inference of untruth, save for the cynicism expressed by its counsel,[7] which is not only unseemly but is also totally without merit.

Carbo also points out that at least one Texas appellate court has rejected the concept of a "Chinese wall" as a procedure for avoiding ethical conflicts. See *Petroleum Wholesale v. Marshall*, 751 S.W.2d 295 (Tex. App.—Dallas 1988, no writ). It is unnecessary to consider this matter since Mr. Adler's employment with the Fish & Richardson firm has been terminated. However, it is appropriate to observe that the Fifth Circuit has yet to consider the efficacy of a "Chinese wall" in deciding and applying federal law relating to ethical conflicts.

For the reasons stated above, Plaintiffs' motion will be denied. In the alternative if the issue be close it is appropriate to consider the effect which disqualification would visit on Defendants. As reflected in the affidavit of F. Alan Frick (Defendants' Hearing Exhibit 3) Mr. Sutton has represented Defendants throughout the course of this litigation, even though he has changed law firms. Defendants have also spent approximately $2 million in the defense of this action. Disqualification would not only deprive Defendants of their counsel of choice but would require the expenditure of additional fees were Defendants required to retain new counsel. There are also more subtle prejudi-

cial effects on Defendants' litigation of this case. All of the pretrial depositions have been conducted by Fish & Richardson attorneys. Having observed witnesses to be called by Plaintiffs these attorneys are in a far better position to plan trial strategy, having seen the witnesses in person than could a lawyer limited to reviewing the deposition transcripts (See Defendants' Hearing Exhibit 34—Supplemental affidavit of Michael O. Sutton at ¶ 5).

■ As compared with the circumstances described in *American Airlines* where the motion to disqualify was filed within less than a month after the initial complaint was filed and those present in *Corrugated Container* in which the discovery process was still ongoing, at the time the alleged conflict arose in this case the pretrial stages had been completed and the pretrial order had been on file for more than a month. Essentially nothing remains in this action but the trial of the case, which would have commenced prior to Mr. Adler's employment with the Fish & Richardson firm, but for the fact that the District Court was required to continue the trial setting. These factors weigh heavily in Defendants' favor. Any appearance of impropriety is minimal or non-existent where Mr. Adler was never enrolled as an attorney of record for Plaintiffs and where the Fish & Richardson firm has never represented Plaintiffs in the past.

*CONCLUSION:*

One can merely speculate as to what might have transpired had Mr. Adler's involvement at the Pravel firm been more fully explored prior to his employment by Fish & Richardson. Similarly it is a matter of speculation as to whether or not the Pravel firm would have acquiesced in Adler's employment had it been contacted by Fish & Richardson as it was by Fulbright & Jaworski which hired him immediately after his tenure with the Pravel firm. It is clear that such omissions have exacted a price—the Defendants and their attorneys in having to expend time and

---

7. That Fish & Richardson was mindful of its ethical obligations is borne out by the fact that the firm summarily declined to interview another associate of the Pravel firm, who had appeared

as counsel of record for Plaintiffs in the pleadings (See Defendants' Hearing Exhibit 2—Affidavit of Michael O. Sutton at ¶¶ 17 and 23, and Attachment C).

effort in opposing the motion, Fish & Richardson in being faced with the prospects of litigation brought by its former employee and Mr. Adler in losing his job. However, disqualification of Defendants' counsel is not a cost which the law requires.

IT IS, THEREFORE, ORDERED that Plaintiff's Motion to Disqualify Defendants' Counsel is in all things denied.

A copy of this order shall be transmitted to counsel for the parties.