647 F.2d 526
 Christopher Peter COSSETTE, Plaintiff-Appellee,
v.
COUNTRY STYLE DONUTS, INC., a Delaware Corporation and
Country Style Donuts, Ltd., a Canadian Company,
jointly and severally, Defendants-Appellants.
 No. 78-3268.
 United States Court of Appeals,
Fifth Circuit.
 June 8, 1981.
 
 Maguire, Voorhis & Wells, Carl D. Motes, Orlando, Fla., for defendants-appellants.
 Coleman R. Rosenfield, Hollywood, Fla., Stuart Meisel, Fort Lauderdale, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before BROWN, AINSWORTH and FRANK M. JOHNSON, Jr., Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 Appellants, Country Style Donuts, Inc., and Country Style Donuts, Ltd.,[1] appeal District Court's decision disqualifying their counsel, the law firm of Maguire, Voorhis & Wells, from representing them in an antitrust suit brought by appellee, Christopher Peter Cossette. The CSD firms contend District Court erred in determining the rule against representation of conflicting interest requires disqualification of the firm. We agree and reverse.[2]
 
 
 2
 CSD, Inc., a Delaware Corporation and CSD, Ltd., a Canadian corporation, are engaged in the business of owning, operating, and franchising donut shop restaurants under the trade name "Country Style Donuts" throughout the continental United States and Canada. In June of 1973, Cossette, a Canadian citizen, purchased a franchise from CSD, Ltd. Subsequently, Cossette moved to Florida to establish his donut franchise and opened shop on December 17, 1974. The franchise was not successful, however, and Cossette went out of business less than a year later.
 
 
 3
 Cossette's initial dealings with the Maguire firm took place late in 1974. Having recently moved to the Orlando, Florida area in preparation for opening his donut shop, Cossette sought local counsel to assist him in various business problems, particularly with immigration law difficulties. At the suggestion of a vice-president of CSD, Ltd., Cossette contacted Lindsey Builder of the Maguire firm, although he knew the firm, and particularly Builder, was the Florida counsel for CSD, Ltd.
 
 
 4
 Cossette and Builder discussed a number of things e. g., the type of business entity through which Cossette should manage his new business but the principal focus of the conversation was Cossette's immigration problems. At some point Cossette expressed dissatisfaction with the CSD franchisers. Recognizing a conflict of interest, Builder declined to express an opinion on the franchisers, and told Cossette he could not act as his attorney because of his relationship with the CSD firms. Builder suggested that Cossette consult James Bogner, then an associate at the Maguire firm, for further legal advice on non-franchise problems. Cossette promptly contacted Bogner. Builder later dictated a memo to Bogner detailing the matters discussed between Builder and Cossette. No mention was made of Cossette's difficulties with the franchisers, most likely because Builder did not regard that matter as being within the scope of the firm's work for Cossette.
 
 
 5
 While Bogner worked for the Maguire firm, he and Cossette met for consultation on three occasions. At one meeting, Cossette gave Bogner a file containing documents and letters pertaining to his immigration status. Bogner formed a corporation for Cossette and then inquired into the immigration obstacles to Cossette's business enterprise. One concern was Cossette was precluded by the immigration laws from drawing a salary from the operation of the donut business because of his Canadian citizenship. During another meeting, Bogner and Cossette discussed the question of whether the CSD firms' contract violated the Florida usury laws. The CSD firms wanted Cossette to sign an equipment package contract; however, Cossette was reluctant. Based on advice from Builder, Bogner informed Cossette the contract was not subject to the usury laws because it was not a loan, but rather a sale of equipment. When Cossette and Bogner met for their third conference, Bogner informed Cossette he was leaving the Maguire firm and Cossette had the option of either remaining a client of the firm or retaining Bogner. Cossette chose Bogner, and shortly thereafter Bogner left the firm taking with him the Cossette immigration file.
 
 
 6
 Cossette had no further dealings with the Maguire firm until he began thinking about filing his law suit against the CSD firms. Just prior to filing this suit, Cossette and his lawyer met with members of the Maguire firm, including Builder, and demanded they not represent the CSD firms in the impending litigation. When the litigation began, although the Maguire firm was not in possession of any of the documents or files relating to the work Bogner had done for Cossette, the firm did have a file of documents relating to the franchise, which was turned over to Cossette upon request.
 
 
 7
 Shortly thereafter, Cossette brought this action against the CSD firms seeking damages under a number of federal and state grounds including antitrust claims, a breach of contract claim, a legal contract claim, a claim of fraud,[3] and a claim for breach of fiduciary relations. District Court dismissed the pendent state claims, leaving only Cossette's claims for relief under the antitrust laws.
 
 
 8
 Through issuance of two separate orders, District Court directed the Maguire firm to withdraw as counsel for CSD, Inc., and CSD, Ltd. In the first order, District Court held although no actual impropriety could be shown, the Maguire firm's representation of CSD, Inc. and CSD, Ltd., would result in the appearance of impropriety in violation of Canon 9 of the Florida Code of Professional Responsibility.[4] This ruling prompted a motion for reconsideration by the CSD firms. After a hearing on the motion, District Court ruled that while the evidence presented a somewhat different picture than before, counsel for Cossette may wish to call Bogner, Builder, or both, as witnesses in the pending antitrust litigation, raising serious ethical problems in violation of DR 5-102.[5]
 
 
 9
 The CSD firms argue District Court's finding that there was a reasonable possibility a specifically identifiable impropriety in fact had occurred related only to Cossette's immigration problem an issue no longer pending in federal court. With respect to the determination Bogner or Builder may be called as witnesses in the pending antitrust litigation, the CSD firms contend DR 5-102 does not apply to testimony of a former member of the firm where District Court never found the attorneys' testimony would be either necessary or prejudicial to presentation of the case. Because of this ruling, the CSD firms claims they are unjustly denied representation by counsel of their choice.
 
 
 10
 In response, Cossette asserts District Court's disqualification of the Maguire firm must be affirmed because (i) a strict prophylactic rule requires disqualification of a former client's current adversary if the matters of the present suit are substantially related to matters of the former representation, (ii) representation of conflicting interests prohibits an attorney from representing one of two formerly joint clients against the other where the clients' interests conflicted at the time of the former representation, no disclosure was made of the conflict, and the current litigation concerns matters which were the subject of the former representation, (iii) Canon 9 requires avoidance of even the appearance of impropriety, and (iv) the attorneys' testimony would be prejudicial to presentation of the case.
 
 
 11
 On our review, we must apply the "clearly erroneous" test to the findings of fact while carefully examining District Court's application of relevant ethical standards. Brennan's, Inc. v. Brennan's Restaurants, Inc., 590 F.2d 168, 171 (5th Cir. 1979), citing Woods v. Covington County Bank, 537 F.2d 804, 810 (5th Cir. 1977). We need not disqualify an attorney in a matter concerning a former client unless the terminated employment had some substantial relationship to the pending suit or unless he has received some privileged information. Church of Scientology v. McLean, 615 F.2d 691, 692 (5th Cir. 1980).
 
 
 12
 Contrary to Cossette's assertions, "(t)he rule of disqualification is not mechanically applied in this Circuit." Id., citing Brennan's, 590 F.2d at 173-74. Rather, it involves a balancing of the likelihood of public suspicion against the interest in retaining counsel of one's choice. McLean, 615 F.2d at 691. There must be a reasonable possibility some specifically identifiable impropriety occurred in order to warrant disqualification. Id. See also Woods, 537 F.2d at 813, and Zylstra v. Safeway Stores, Inc., 578 F.2d 102, 104 (5th Cir. 1978).
 
 
 13
 In this case, however, Cossette has failed to establish that the likelihood of public suspicion outweighs the CSD firms' right to counsel of their choice. Bogner had virtually no contact with the CSD firms and, in fact, left the Maguire firm before the institution of this action. During his representation of Cossette, Bogner formed a corporation for Cossette, worked on his immigration problems, and answered usury questions regarding interest rates on the equipment package contract. Absent the state fraud and contract claims, none of these issues related to the antitrust litigation presently pending before the trial court. There was no demonstration that any confidential information the Maguire firm may have acquired during Bogner's representation of Cossette would be of any value to the CSD firms in resolution of the antitrust claims for trade practice violations. As the pendant state claims have been dismissed, we cannot conclude "the matters of the present suit are substantially related to the matters of the prior representation." Wilson P. Abraham Construction Co. v. Armco Steel Corp., 559 F.2d 250, 252 (5th Cir. 1977).
 
 
 14
 Moreover, the Maguire firm is not presently, nor has it been in the past, exposed to confidential matters regarding Cossette. Bogner's file on Cossette and the CSD firms involved only bills, corporate papers, and some memoranda, none of which were of a confidential nature. The Maguire firm's file regarding the franchise was turned over to Cossette. Cossette has failed to show an impropriety occurred.
 
 
 15
 Nor do we find the possibility Builder and/or Bogner may be called to testify in the pending antitrust litigation warrants disqualification of the Maguire firm. Although disqualification is required when counsel "ought" to appear as a witness, Florida Realty, Inc. v. General Development Corp., 459 F.Supp. 781, 784 (S.D.Fla.1978), Cossette has not shown the attorneys are aware of facts making it (i) obligatory to place themselves on the witness stand in order to advance the CSD firms' case completely and zealously, see, e. g., J. P. Foley & Co., Inc. v. Vanderbilt, 523 F.2d 1357, 1358-59 (2d Cir. 1975), Draganescu v. First National Bank of Hollywood, 502 F.2d 550 (5th Cir. 1974), Supreme Beef Processor v. American Consumer Ind., 441 F.Supp. 1064, 1067 (N.D.Tex.1977), Sheldon Electric Co. v. Blackhawk Heating and Plumbing, 423 F.Supp. 486, 489 n.5 (S.D.N.Y.1976), Miller Electric Construction, Inc. v. Devine Lighting Co., 421 F.Supp. 1020 (W.D.Pa.1976), or (ii) likely or probable they will be called to the witness stand by opposing counsel to testify on a matter of importance to Cossette's case. See, e. g., Roberts v. State, 345 So.2d 837 (Fla.D.C.A.1977). There is no evidence which would justify the inference that in the exercise of effective representation the Maguire firm ought to call on Bogner, Builder, or any other past or present attorneys in the firm for testimony. Only the antitrust claims are before the trial Court and there is no basis for concluding any of the aspects of the Maguire firm's representation of Cossette bear upon these federal claims. In addition, neither Cossette or his counsel contended during the hearing on this disqualification matter any member of the Maguire firm would be called as a witness and there is no evidence in the record which would indicate anything to the contrary.
 
 
 16
 In light of such findings, we cannot conclude the Maguire firm should have been disqualified. Judgment of District Court is reversed.
 
 
 17
 REVERSED.
 
 
 18
 FRANK M. JOHNSON, Jr., Circuit Judge, dissenting:
 
 
 19
 I dissent. In my opinion the district court's finding that further representation of Country Style Donuts, Inc., and Country Style Donuts, Ltd. by the Maguire, Voorhis and Wells law firm would involve an appearance of impropriety under Canon 9 of the Code of Professional Ethics was not clearly erroneous.
 
 
 20
 Both Mr. Builder and Mr. Bogner were associated as attorneys with the Maguire, Voorhis and Wells law firm when in 1974 Mr. Cossette discussed with Builder his new donut shop business, discussed the type of business entity through which Cossette should manage his new business and also expressed to Builder some dissatisfaction with the Country Style Donut franchises. Recognizing a conflict of interest since the Maguire law firm was then representing Country Style Donuts, Builder suggested that Cossette consult with Bogner an associate of the same law firm$ Bogner conferred with Cossette upon several occasions about whether the Country Style Donut contract was usurious and about Cossette's general dissatisfaction with the Country Style Donuts contract. Bogner was advised by Builder that he had researched the usury question and that the contract was not subject to the usury laws. Bogner relayed this information to Cossette. The Maguire firm's own internal billing files disclosed that the firm had done legal work for Cossette on the usury matter.
 
 
 21
 Builder testified that he "didn't think in terms of the fact that he (Cossette) was being represented by Bogner and (that Builder) was on a different side." Neither Builder nor Bogner recommended that Cossette consult an attorney not affiliated with the Maguire firm. Neither explained to Cossette the ethical implications of a law firm's representing two clients with imminent potentially conflicting interests.
 
 
 22
 This conflict surfaced when Cossette sued Country Style Donuts in January 1976, alleging violations of the federal antitrust laws, breach of contract, illegal contract, fraud and breach of a fiduciary relationship.[1] The district court, after hearing this evidence, held that the Maguire firm's continued representation of Country Style Donuts in the litigation initiated by Cossette would create the appearance of impropriety.
 
 
 23
 A per se disqualification rule exists as to an attorney who appears on behalf of a former client's current adversary. The standard which triggers the application of the rule requires a two-fold inquiry. Wilson P. Abraham Const. v. Armco Steel Corp., 559 F.2d 250, 252 (5th Cir. 1977). The first question is whether there was in fact an attorney-client relationship between the party seeking disqualification (Cossette) and the attorney in dispute (the Maguire firm). As outlined above, this was evident. The fact, emphasized by the majority, that Bogner had withdrawn from the Maguire firm before this litigation was instituted, is entirely immaterial to the issue of the conflict that existed when Bogner was in the firm. The Maguire firm's disqualification stems from the relationship that existed when Builder was representing Country Style Donuts and Bogner was representing Cossette and while both Builder and Bogner were in the same law firm. Once the attorney-client relationship showing is made, the only other question is whether the matters involved in the present litigation are substantially related to the matters of the former relationship. This is also evident. As we stated in Wilson P. Abraham Const. v. Armco Steel Corp., supra :
 
 
 24
 The law in this Circuit is fairly straightforward. This Court has recently reaffirmed with regards to attorney disqualification that a former client seeking to disqualify an attorney who appears on behalf of his adversary, need only to show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him. In re Yarn Processing Patent Validity Litigation, 530 F.2d 83 (5th Cir. 1976); T. C. Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265 (S.D.N.Y.1953). This rule rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation. The Court may not even inquire as to whether such disclosures were in fact made or whether the attorney in fact is likely to use the damaging disclosures to the detriment of his former client. Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2nd Cir. 1973). The inquiry is limited solely to whether the matters of the present suit are substantially related to matters of the prior representation, and this is because this Court recognizes that in order to aid the frank exchange between attorney and client, it is necessary to preclude even a possibility that information given in confidence by a former client will ever be used without that client's consent. The law in this Circuit is, of course, little more than a reinforcement of the Code of Professional Responsibility, Ethical Considerations, and Disciplinary Rules, promulgated by the American Bar Association and adopted by the Supreme Court of Louisiana effective July 1, 1970. See Canons 4, 5 and 9; Ethical Considerations 4-1, 4-4, 4-5 and 4-6; and Disciplinary Rules 4-101(B) and 5-105.
 
 
 25
 Confidential exchanges were required to be shown in Wilson P. Abraham Const. v. Armco Steel Corp., supra, but that was because that case did not involve a former client only a co-defendant of a former client. Here the relationship of Cossette with the Maguire firm was as a client, and Wilson P. Abraham Const. v. Armco Steel Corp., supra, teaches that under such circumstances confidential exchanges are presumed.
 
 
 26
 In my opinion the Maguire law firm had deliberately and knowingly placed itself in a position of representing conflicting interests, and disqualification was mandated by Canon 9 of the Code of Professional Ethics.
 
 
 27
 I dissent.
 
 
 
 [1]
 The two corporations will be referred to collectively throughout this opinion as the CSD firms except where clarification necessitates otherwise. In those instances they will be referred to as either CSD, Inc., or CSD, Ltd., respectively
 
 
 [2]
 Before deciding the case, we requested supplemental briefs from the parties regarding applicability of the Supreme Court's recent decision in Firestone Tire & Rubber Co. v. Risjord, -- U.S. --, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), which held orders denying motions to disqualify opposing party's counsel in a civil case are not appealable final decisions under 28 U.S.C. § 1291. Id. at --, 101 S.Ct. at 676, 66 L.Ed.2d at 581. After reviewing the briefs, we concluded Risjord does not bar our reviewing District Court's action in this case as the Supreme Court explicitly declined to express any opinion on the appealability of orders, such as here, granting a motion to disqualify counsel. Id. at -- n. 8, 101 S.Ct. at 672 n. 8, 66 L.Ed.2d at 577 n. 8
 
 
 [3]
 One of the alleged fraudulent statements related to Cossette's ability to work in the United States without difficulty notwithstanding his status as a Canadian citizen
 
 
 [4]
 Canon 9 of the Code of Professional Responsibility provides:
 EC 9-6. Every lawyer owes a solemn duty to uphold the integrity and honor of his profession;
 to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.
 
 
 [5]
 Disciplinary Rule 5-102 states in relevant part:
 Withdrawal as Counsel When the Lawyer Becomes a Witness
 (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).
 (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.
 
 
 [1]
 The fraud and breach of contract claims were dismissed by the district court