In re John D. SEIVERS, D.D.S., Debtor.

Steven R. SCHWAN, Plaintiff,

v.

John D. SEIVERS, Defendant.

Bankruptcy No. 86 B 5882 M. Adv. No. 86 C 1092.

United States Bankruptcy Court, D. Colorado.

June 26, 1987.

Karl Dakin, Denver, Colo., for plaintiff.

Christine Jobin, Denver, Colo., for defendant.

## ORDER GRANTING MOTION FOR NEW TRIAL

STEVEN W. RHODES, Bankruptcy Judge, Sitting by Assignment.

### I.

John D. Seivers, the debtor, has filed a motion for a new trial of this adversary proceeding following this Court's decision denying his discharge pursuant to 11 U.S.C. § 727(a)(2) and (4). Specifically, the Court had concluded that Seivers had fraudulently concealed and transferred assets, and had knowingly filed false schedules. Seivers, who is now represented by new counsel, contends that his original attorney, Matthew Skeen, should have withdrawn from representing him pursuant to Disciplinary Rule 5–102(A) of the Colorado Code of Professional Responsibility when it became obvious that Skeen should be called as a witness for his client. Seivers seeks to reopen the proofs to call Skeen as a witness, and contends that Skeen's testimony regarding the circumstances in which the allegedly fraudulent transfers took place and the circumstances in which the schedules were prepared and filed, will exculpate him with respect to any fraudulent or wrongful intent.

The plaintiff, Steven R. Schwan, opposes the motion for new trial, contending that Seivers had every opportunity to explain the discrepancies during his testimony and that there are no facts to which Skeen can testify which were unavailable to Seivers when he testified at trial.

### II.

Rule 59(a), Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 9023, provides:

(a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

The standards to be applied in reviewing a motion under this rule are stated in 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2803 (1979) at 31–33:

Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is his right, and indeed his duty, to order a new trial if he deems it in the interest of justice to do so. The court may act either on the motion of a party or on its own initiative. The grounds on which it may act are discussed in later sections. Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial. Ultimately the motion invokes the sound discretion of the trial court, and appellate review of its ruling is quite limited. [Footnotes omitted.]

See *Brownlow v. Aman,* 740 F.2d 1476 (10th Cir.1984); *Baum v. Great Western Cities Inc. of New Mexico,* 703 F.2d 1197, 1211 (10th Cir.1983); *Rodgers v. Hyatt,* 697 F.2d 899, 901 (10th Cir.1983); *Trotter v. Todd,* 719 F.2d 346 (10th Cir.1983); *Thompson v. Kerr-McGee Refining Corporation,* 660 F.2d 1380 (10th Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982); *Scholz Homes, Inc. v. Wallace,* 590 F.2d 860, 864 (10th Cir.1979); *Holmes v. Wack,* 464 F.2d 86 (10th Cir. 1972). *See also Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); and *McDonough Power Equipment, Inc. v. Greenwood,* 464

U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

### III.

Disciplinary Rule 5–102(A) of the Colorado Code of Professional Responsibility provides:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

Thus, the basic rule is that an attorney must withdraw from representing a client when it becomes obvious that the attorney ought to testify for the client.

Several decisions have applied this rule in the context of a motion to disqualify an attorney who, it is contended, ought to be a witness for the client. *See Optyl Eyewear Fashion International Corporation v. Style Companies, Ltd.,* 760 F.2d 1045 (9th Cir.1985); *Rosen v. NLRB,* 735 F.2d 564 (D.C.Cir.1984); *Groper v. Taff,* 717 F.2d 1415 (D.C.Cir.1983); *Waltzer v. Transidyne General Corporation,* 697 F.2d 130 (6th Cir.1983); *General Mill Supply Company v. SCA Services, Inc.,* 697 F.2d 704 (6th Cir.1982); *Cossette v. Country Style Donuts, Inc.,* 647 F.2d 526 (5th Cir.1981) [1]; *Healthcrest, Inc. v. American Medical International, Inc.,* 605 F.Supp. 1507 (N.D. Ga.1985); *Jones v. City of Chicago,* 610 F.Supp. 350 (N.D.Ill.1984); *Eurocom, S.A. v. Mahoney, Cohen & Company,* 522 F.Supp. 1179 (S.D.N.Y.1981); *MacArthur v. Bank of New York,* 524 F.Supp. 1205 (S.D.N.Y.1981); *Miller Electric Construction, Inc. v. Devine Lighting Company, Inc.,* 421 F.Supp. 1020 (W.D.Pa.1976). Although the present issue is not framed in the context of a motion to disqualify, the teachings of these cases on the issue of when an attorney should withdraw in order to testify for the client are pertinent to the present motion.

The basis for prohibiting an attorney to act as both an attorney and a witness for the client was stated in *In re American Cable Publications (Skeen v. Chase Manhatten Bank),* 768 F.2d 1194, 1196 (10th Cir.1985):

The rules prevent situations in which others might think the lawyer, as witness, is distorting the truth for his client or is enhancing his own credibility as advocate by virtue of having taken an oath as witness, as well as the uneasy situation that arises when an opposing counsel must impeach on cross-examination another lawyer-adversary.

The rationale is further elaborated in Ethical Consideration 5–9 of the Code of Professional Responsibility:

Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

*See also MacArthur v. Bank of New York,* above; and *Jones v. City of Chicago,* above.

■ An attorney "ought" to testify for the client when the exercise of independent professional judgment indicates that it is necessary to advance the client's cause

---

**1.** In *Cossette,* the Fifth Circuit also held that an order granting a motion to disqualify is immediately appealable. However, in *Gibbs v. Paluk,* 742 F.2d 181 (5th Cir.1984), the Fifth Circuit reversed itself on that issue. *See also Richardson-Merrell Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985).

completely and zealously. *Cossette v. Country Style Donuts, Inc.; In re GHR Energy Corp.*, 60 B.R. 52, 63 (Bankr.S.D. Tex.1985). *See* Canons 5, 6 and 7 of the Code of Professional Responsibility, which provide that an attorney should exercise "independent professional judgment" and should represent a client "competently" and "zealously within the bounds of the law."

### IV.

■ Applying these standards, the Court concludes that Skeen should have withdrawn from representing Seivers at the trial of this adversary proceeding, because it was obvious that Skeen ought to have been a witness for Seivers. This conclusion is drawn from the nature of the factual issues at trial and from the unique position Skeen is in to testify on those issues.

With respect to Schwan's claims under 11 U.S.C. § 727(a)(2) and (4), the issue never was whether the transfers took place or whether the schedules were false; the discrepancies were uncontroverted. Rather, the issue has been Seivers's intent. A review of the specific discrepancies will bear this out.[2] First, Seivers transferred approximately $5500 to his wife within days before filing his bankruptcy petition and did not disclose the transfer or list the amount as an asset. Second, Seivers received insurance checks before the bankruptcy filing but held them for deposit until shortly after the filing, and he did not disclose the checks as assets in his schedules. Third, Seivers understated to some extent his estimated income in his statement of income and expenses. Fourth, Seivers omitted from his schedules and statements any reference to his ongoing dentistry practice. Fifth, Seivers stated in his schedules that $7700 in patient accounts receivables had been garnished and therefore were of no value; in fact, Seivers

collected these accounts receivable after the petition was filed and used the proceeds in his business. Sixth, Seivers stated in his schedules that $38,000 worth of equipment had been repossessed and therefore was of no value; in fact, Seivers had an undisclosed agreement with the secured creditor to continue to make payments on the equipment while the equipment was in storage in their joint possession. Seventh, Seivers failed to disclose other equipment and furnishings in his possession worth approximately $3700.

Although admitting these discrepancies, Seivers testified that he did not intend to conceal or defraud, and that he never tried to hide these assets from the trustee. Thus, the issue of Seivers's intent was the crucial issue, upon which the Court eventually found against him.[3]

In the hearing on the motion for new trial, Skeen gave testimony that might be considered a summary or preview of his testimony at the new trial, if it is granted. Skeen indicated that Seivers was extremely concerned about the accuracy of the schedules; that Seivers and his wife prepared a rough draft of the forms, which were put into final form and reviewed by a paralegal in his office; that he and Seivers reviewed them; that there was no discussion of the terms "garnish" or "repossess", although Skeen did have extensive discussion with Seivers's prior attorney, Sheldon Smith, about the arrangement with the secured creditor; that he advised Seivers of his view that absolute accuracy on the schedules is less important than full disclosure to the trustee; that he did discuss with Seivers and his wife how to pay their bills just before and after filing bankruptcy, from which the Seivers' might have concluded that using her separate account was reasonable and appropriate; and that there

---

**2.** This summary of the discrepancies is taken from the Court's decision on March 4, 1987, trial transcript pages 153–157.

**3.** The Court so found not only because of the manifest pattern of discrepancies, but also because of Seivers's abusive attitude that Schwan, his primary creditor, should receive nothing on

account of his claim, which arose from an arbitrator's award resulting from the dissolution of their joint dentistry practice. The Court concluded that this attitude substantially affected Seivers's credibility as a witness and cast an ominous light upon the admitted discrepancies.

was nothing in his testimony that Seivers could not have testified to.

From this glimpse of Skeen's testimony, the Court concludes that Skeen ought to have been called as a witness for Seivers by counsel exercising independent judgment and advocating Seivers's position completely and zealously, and that therefore Skeen should have withdrawn from representing Seivers before trial.[4] The thrust of Skeen's testimony, if believed, appears to be that Seivers may well have been relying on Skeen's legal advice in connection with the discrepancies at issue. It should have been obvious to Skeen that such relevant and important evidence as this should have been presented at trial.[5]

■ Moreover, the Court must reject Schwan's assertion that because Seivers had every opportunity to explain the discrepancies, proofs should not now be reopened to allow Skeen to testify. It is true that an attorney's withdrawal may not be necessary when the attorney's testimony is merely cumulative; in that event, it may not be necessary to call the attorney to testify in order to advance the client's position completely and zealously. *See* Ethical Consideration 5–10 of the Code of Professional Responsibility; and *Council for the National Register of Health Service Providers in Psychology v. American Home Insurance Company*, 632 F.Supp. 144 (D.D.C.1985). However, Skeen's testimony is not merely cumulative. Not only has Seivers put Skeen's legal advice directly at issue, but also Skeen's testimony might provide corroboration of Seivers's testimony, the absence of which led in part to the Court's conclusion that Seivers's testimony lacked credibility. Thus, it is clear that Seivers's opportunity to testify did not make it unnecessary for Skeen to testify.

## V.

■ In these circumstances, it must be concluded that the interest of justice requires the Court to grant a new trial and reopen the proofs to permit Seivers to call Skeen as a witness. Several considerations mandate this result.

First, the same factors that lead to the conclusion that Skeen should have withdrawn from representing Seivers in order to become a witness also suggest that the testimony should now be considered, even though the trial has been concluded. The testimony is just as relevant and important now as it was at trial.

Second, there is no indication that Seivers waived the conflict of interest or willfully manipulated the circumstances to obtain this result. Rather, Skeen testified that it did not occur to him that he should have been a witness until after trial,[6] and

4. The conclusion that Skeen should have withdrawn from representing Seivers in order to testify in the circumstances of this case is consistent with similar conclusions in several prior cases in which an attorney had been involved in the underlying transaction that resulted in litigation. *See, e.g., Waltzer v. Transidyne General Corporation,* above; *Groper v. Taff,* above; *General Mill Supply Company v. SCA Services, Inc.,* above; *J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357 (2d Cir.1975); *Healthcrest, Inc. v. American Medical International, Inc.,* above; *Jones v. City of Chicago,* above; *MacArthur v. Bank of New York,* above; and *Eurocom, S.A. v. Mahoney Cohen & Company,* above.

5. This decision must not be interpreted to mean that every time a creditor challenges the accuracy of the debtor's schedules in an action under 11 U.S.C. § 727(a), the debtor's attorney must withdraw and testify. No doubt there are circumstances when the debtor's attorney is not in a position to give any substantial, non-cumulative evidence on the disputed factual issues.

And even where the attorney ought to be a witness for the client, the Code of Professional Responsibility provides an exception to this rule that might have particular relevance in bankruptcy. This exception, found in Disciplinary Rule 5–101(B)(4) permits an attorney to testify if the withdrawal "would work a substantial hardship on the client because of the distinctive value of the lawyer" in the particular case. *See General Mill Supply Company v. SCA Services, Inc.,* above; and *In re GHR Energy Corp.,* above.

6. After the trial, the Court held a conference with both counsel and indicated a concern about Skeen continuing to represent Seivers in light of the likelihood that Skeen should have been a witness. In the circumstances, this post-trial expression of concern was probably both tardy and insufficient. *See General Mill Supply Company v. SCA Services, Inc.,* 697 F.2d at 712 ("[T]he court should *sua sponte* raise ethical problems involving danger to a just, speedy and inexpensive remedy, even if the parties do not.") *See also MacArthur v. Bank of New York,* above.

that until then he never discussed the issue with Seivers. In these circumstances, the Court is satisfied that Seivers reasonably relied upon Skeen to present his best defense at trial and that no part of the responsibility for Skeen's failure to withdraw lies with Seivers.

Third, there is no great prejudice to Schwan, and some of the prejudice can be effectively cured. Of course, the trial will be longer, but it should have included Skeen's testimony in the first place; thus there is little additional prejudice from this consideration. Moreover, if Schwan has not taken Skeen's deposition and finds it necessary to do so, it can still be arranged. The only prejudice which cannot be cured at this time arises from Schwan's expenses in having to deal with this issue in the context of a post-trial motion. Nevertheless, the Court concludes that this prejudice is unsubstantial in light of the nature of these proceedings and their effect upon Seivers.

Finally and perhaps most importantly, the nature of these proceedings and their effect upon Seivers compels the Court to be somewhat more liberal in considering his motion for a new trial. At stake here is the debtor's discharge and the fresh start that the discharge would allow him. Simply stated, it would be unjust to continue to deny Seivers his fresh start if there is any reasonable possibility that the denial resulted from his own attorney's failure to withdraw in order to testify for his client, as required by the Colorado Code of Professional Responsibility.

Accordingly, the motion for a new trial is granted.[7]

7. Although not specifically requested in the motion for new trial, Seivers's new counsel suggested in the hearing that Mrs. Seivers would also be called as a witness if the new trial were granted. However, this request must be denied because there is no indication that Skeen's failure to call Mrs. Seivers to testify at trial was in any related to his own failure to withdraw and testify. As far as the record establishes, Mrs. Seivers was available to testify at trial, but apparently a decision was made not to call her. Moreover, the record does not reflect what her testimony might be. Accordingly, the new trial is granted and the proofs are reopened for the limited purpose of taking Skeen's testimony.