## In re WATERFALL VILLAGE OF ATLANTA, LTD., Debtor.

## H & K DEVELOPERS, Movant,

v.

## WATERFALL VILLAGE OF ATLANTA, LTD., Respondent.

### Bankruptcy No. 88–03905–SWC.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 11, 1989.

As Amended Oct. 19, 1989.

Richard B. Herzog, Jr., Bisbee, Rickertsen & Herzog, Atlanta, Ga., for movant.

Stephen C. Greenberg, Holt, Ney, Zatcoff & Wasserman, Atlanta, Ga., for respondent.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is the motion of H & K Developers ("H & K") to disqualify Holt, Ney, Zatcoff & Wasserman ("HNZW") as counsel for the debtor in possession. This matter is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). The court's findings and conclusions are as follows:

On May 2, 1988, the debtor[1] filed a Chapter 11 petition. Debtor has operated its business as a debtor in possession since the commencement of this case. Debtor's principal asset is a 152 unit apartment complex located at 1717 Fernlake Drive in Marietta, Cobb County, Georgia, known as the Waterfall Village Apartments ("the property").

On May 11, 1988, pursuant to 11 U.S.C. Section 329 and Bankruptcy Rule 2016(b), HNZW filed its attorney "Disclosure of Compensation" ("compensation disclosure"). On June 2, 1988, pursuant to 11 U.S.C. Section 327 and Bankruptcy Rule 2014, debtor filed an "Application for Ap-

---

**1.** Pursuant to 11 U.S.C. Section 1101(1) " 'debtor in possession' means debtor except when a person that has qualified under section 322 of [Title 11] is serving as trustee in the case."

proval of Employment of Attorneys" and an accompanying "Affidavit of Proposed Attorney" ("the application") in which it made certain disclosures. The application disclosures did not include a copy of, or make any reference to, the May 11, 1988 compensation disclosure. Based upon the application, the court entered an order on August 23, 1988, approving debtor's employment of HNZW.

On March 15, 1989, H & K filed the present motion to disqualify HNZW as counsel for the debtor. The grounds for the motion are that HNZW is not disinterested and that the application, on which the court's August 23, 1988 order authorizing the employment of HNZW was premised, provided inadequate and incomplete disclosure. In defense of the motion, HNZW contends that it is disinterested and that its disclosures in the application were adequate and that any alleged deficiencies appear in other documents of record in this case. After the presentation of evidence and argument by counsel, the matter was taken under advisement.

The debtor has filed a proposed plan of reorganization. In addition, H & K, the second lienholder on the property, has filed a competing plan of liquidation. Furthermore, H & K has pending before the court a "Notice of Default and Motion to Rescind Interim Order for Use of Cash Collateral and Application for Appointment of Trustee." The application seeking to employ HNZW as debtor's counsel affirmatively disclosed the following relationships:

(1) HNZW previously, currently, and in the future expects to represent Southmark Corporation ("Southmark") on matters unrelated to this Chapter 11 case.

(2) Southmark owns Southern Ventures, Inc.

(3) Southern Ventures, Inc. is a joint venture partner with Harmon/Envicon Associates in Eastern Realty Consulting Company. (sic)

(4) Eastern Realty Consulting Company owns a 50% interest in FEC Mortgage Corporation. (sic)

(5) FEC Mortgage Corporation is a creditor of the debtor. (sic)

The relationship of Southmark to the debtor was not disclosed in the body or text of the application. It is only by analysis of the text and comparison with the signature affixed to the application that one can discern that Southmark owns and controls the debtor. In this regard, the application is signed by debtor's General Partner, "Harmon/Envicon Associates", by "Southern Ventures, Inc., its Managing Joint Venture Partner." Even this is misleading, since the text of the application does not actually connect Southmark, Southern Ventures, Inc., Harmon/Envicon Associates and the debtor. The evidence further reflects that some of the disclosures in the application were incorrect in certain respects as follows:

(1) Harmon Associates, not Harmon/Envicon Associates, is the joint venture partner with Southern Ventures, Inc. in Eastern Realty Consulting Company.

(2) Eastern Realty Consulting Company owns a 50% interest in FEC Mortgage *Company*, not FEC Mortgage Corporation.

(3) FEC Mortgage Company, not FEC Mortgage Corporation, is a creditor of the debtor.

Certain relationships, not disclosed in the application, do appear in other pleadings of record [2]. However, the pleadings were neither attached to, nor referenced in, the application. They are as follows:

(1) *Disclosure of Compensation, filed May 11, 1988:* Southmark has agreed to advance fees to HNZW as compensation for services rendered and expenses incurred in this Chapter 11 case on the condition that HNZW make periodic application to the court for such compensation and reimbursement from the debtor and that HNZW reimburse Southmark for such fees and expenses as may be allowed and authorized by the court to be paid by the debtor to HNZW.

(2) *Statement of Debtor's Financial Affairs, filed June 7, 1988:* Southmark Management Company has kept and has

---

2. The record consists of seven volumes at the     time of this order.

in its possession debtor's books of accounts and records from June 1987 to the present time and also has possession of debtor's tax returns for the three years preceding the Chapter 11 filing.

(3) *Statement of Executory Contracts, filed June 7, 1988:* The debtor has a property management contract with Southmark Management Company.

(4) *List of Creditors, filed pursuant to Bankruptcy Rule 1007(a)(1) and accompanying debtor's voluntary Chapter 11 petition, filed May 2, 1988:* FEC Mortgage Company is a creditor of the debtor.

(5) *Declaration accompanying voluntary petition, filed May 2, 1988:* Southern Ventures, Inc. is the managing joint venture partner of Harmon/Envicon Associates.

(6) *Declaration accompanying voluntary petition, filed May 2, 1988, and information summary sheet, filed May 2, 1988:* Harmon/Envicon Associates is the sole general partner of the debtor.

(7) *Schedule A–3 of the Statement of All Liabilities of Debtor filed June 7, 1988:* Harmon/Envicon Associates, debtor's general partner, claims to be an unsecured creditor of the debtor by virtue of having made advances on behalf of the debtor.

At least two other relationships were not disclosed by the debtor until they were revealed in the pleadings or through evidence presented in connection with the subject motion. They are as follows:

(1) *Transcript of the April 10, 1989 hearing on H & K's Motion to Disqualify Debtor's Counsel, pages 44–45 (hereinafter "Transcript, p. # "):* Southmark Management Company, which manages the debtor, is owned and controlled by Southmark Corporation.

(2) *Debtor's Response to Motion of H & K Developers to Disqualify Counsel for the Debtor in Possession, page 25, filed April 7, 1989:* FEC Mortgage Company,

a creditor of the debtor, holds an *unrecorded* security deed on the property.

The evidence is undisputed that the persons with whom HNZW dealt on behalf of the debtor, Bruce Schnitz, Clark Zimmerman, and Angie Dugick [3], are employees of Southmark. These employees, through Southmark's downstream subsidiaries, to wit, Southern Ventures, Inc. as the managing joint venture partner of Harmon/Envicon Associates, debtor's general partner, perform the duties and responsibilities of the debtor. (Transcript, p. 61–71).

The first issue raised in H & K's motion is whether HNZW is disinterested, as required by the Code. Section 327(a) of the Bankruptcy Code, made applicable in Chapter 11 by Section 1107(a), requires that an attorney for a debtor in possession not hold or represent an interest adverse to the estate, and that the attorney be a disinterested person. The disinterested person and adverse interest tests of Section 327(a) overlap with the definition of "disinterested person" in Section 101(13). *In re Intech Capital Corp.*, 87 B.R. 232, 233 (Bankr.D. Conn.1988). There is no dispute that HNZW meets the definition of a disinterested person as set out in Section 101(13)(A)-(D). Rather, in the present case, the issue is whether, under Section 101(13)(E), HNZW has a materially adverse interest to the estate or to any class of creditors or equity security holders. If HNZW has such a materially adverse interest, it would not be disinterested, and disqualification would be appropriate.

There is a split of authority regarding the test for disqualification of an attorney. One line of cases applies a rigid, strict constructionist rule, holding that even a potential conflict of interest or an "appearance of impropriety" is enough to merit disqualification. *See In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 753–57 (Bankr. N.D.Tex.1988); *In re Michigan General Corp.*, 78 B.R. 479, 484 (Bankr.N.D.Tex.

---

**3.** Ms. Dugick is no longer employed by Southmark. (Transcript, p. 69). Stephen Greenberg of HNZW testified that Joe McCoy, an employee of Southmark Management Company, is the main person with whom he has dealt in regard to the management operations of the debtor. (Transcript, p. 72–73). No evidence was presented as to who the responsible persons are with respect to FEC Mortgage Company, a creditor of the debtor.

1987); *Roger J. Au & Son, Inc. v. Aetna Ins. Co. (In re Roger J. Au & Son, Inc.)*, 64 B.R. 600, 606 (N.D.Ohio 1986).

The rationale for this approach is grounded in an analysis of Canon 9 of the ABA Model Code of Professional Responsibility.[4] Canon 9 provides: "A lawyer should avoid even the appearance of professional impropriety." Thus, it is reasoned, it is not necessary for an actual ethical violation to occur, but it is enough if a potential conflict exists. *See In re Roger J. Au & Son, Inc.*, 64 B.R. at 606. The *Kendavis Industries* court went a step further. That court found that "[t]he concept of *potential* conflicts is a contradiction in terms. Once there is a conflict, it is *actual—not potential.*" *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. at 754. Thus, any conflict, potential or actual, is enough to disqualify an attorney.

A more flexible approach appears to be supported by the statutory scheme as enunciated by Congress in the Bankruptcy Code itself. For example, an attorney is not disqualified from representing a debtor in possession solely because of the attorney's employment by, or representation of, a creditor, provided there is no "actual conflict of interest." 11 U.S.C. Sections 327(c) and 1107(a); *In re O'Connor*, 52 B.R. 892, 897 (Bankr.W.D.Okla.1985). Neither is an attorney disqualified from representing a debtor in possession solely because of the attorney's representation of the debtor prior to the case filing. 11 U.S.C. Section 1107(b). In such instances, where objection is made, the court must determine if there is an actual conflict. If so, counsel is disqualified, but if not, counsel may be employed.

The Eleventh Circuit Court of Appeals interpreted Canon 9 more flexibly than the courts noted above. In *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir.1985), the court adopted the two-pronged test for attorney disqualification as announced in the former Fifth Circuit decision of *Woods v. Covington County Bank*, 537 F.2d 804, 813 & n. 12 (5th Cir. 1976):

> First, although there need not be proof of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did occur." Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case."

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1210 (11th Cir.1985) (quoting *United States v. Hobson*, 672 F.2d 825, 828 (11th Cir.1982) (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 813 & n. 12 (5th Cir.1976)). *See also Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir. June 1981).[5] The two-pronged test has been held to be applicable in bankruptcy cases. *See In re Colony Square Co.*, 60 B.R. 1003, 1021 (N.D.Ga.1986), *aff'd*, 819 F.2d 272 (11th Cir.1987); *In re Flanigan's Enter., Inc.*, 70 B.R. 248, 250–254 (Bankr.S.D.Fla.1987); *Matter of Macon Prestressed Concrete Co.*, 61 B.R. 375, 378 (Bankr.M.D.Ga.1986); *Matter of The Cropper Co.*, 35 B.R. 625, 631–32 (Bankr.M.D. Ga.1983).

In applying this two-pronged test, the court must resolve (1) whether a "specifically identifiable impropriety" (i.e., an actual conflict of interest) occurred and, if so, (2) whether the likelihood of public suspicion (i.e., appearance of impropriety) in the judicial process outweighs HNZW's interest in representing the debtor in this case. Under the Eleventh Circuit holdings, both questions must be answered in the affirmative for this court to disqualify counsel.

---

**4.** The State Bar of Georgia has adopted Canon 9 of the ABA Model Code of Professional Responsibility. *See Georgia Court and Bar Rules* 11–53 (1989). Local District Court Rule 110–3, N.D.Ga., made applicable herein by Bankruptcy Local Rule 705–1, N.D.Ga., provides that lawyers practicing before this court shall be governed by the Code of Professional Responsibility and the Standards of Conduct contained in the Rules and Regulations of the State Bar of Georgia.

**5.** The holding in a decision by the former Fifth Circuit, such as *Cossette*, prior to October 1, 1981, is binding precedent on courts of the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

Additionally, courts in other circuits have similarly held that a *potential* conflict of interest generally is not disqualifying as long as no *actual* conflict develops. *See In re Martin*, 817 F.2d 175, 182 (1st Cir.1987); *In re Stamford Color Photo, Inc.*, 98 B.R. 135, 137–38 (Bankr.D.Conn.1989); *In re Quakertown Glass Co.*, 73 B.R. 468, 469 (Bankr.E.D.Pa.1987); *In re Guy–Apple Masonry Contractor, Inc.*, 45 B.R. 160, 166 (Bankr.D.Ariz.1984); *In re Olson*, 36 B.R. 74, 75–76 (D.Neb.1983). As the court noted in *In re Martin:*

> The naked existence of a potential for conflict of interest does not render the appointment of counsel nugatory, but makes it voidable as the facts may warrant. It is for the court to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action (say, disqualification or disgorgement or invalidation of a lien).

*In re Martin*, 817 F.2d at 182 (citations omitted).

■ In the present case, H & K maintains that the representation of Southmark by HNZW on unrelated matters creates an actual conflict of interest requiring disqualification. Mr. Greenberg testified that he specifically advised employees of Southmark that HNZW is "authorized only to represent the Debtor in Possession in this case, and it is only in that respect that we [HNZW] can act in this case." (Transcript, p. 70). H & K has presented no evidence to refute this testimony. Absent other factors courts have consistently held that such representation alone is not disqualifying. *See In re Stamford Color Photo, Inc.*, 98 B.R. at 137–38; *In re Quakertown Glass Co.*, 73 B.R. at 469; *In re Mahoney, Trocki & Assoc., Inc.*, 54 B.R. 823, 827–28 (Bankr.S.D.Cal.1985); *In re O'Connor*, 52 B.R. at 897. There has been no showing of an actual conflict of interest or display of undivided loyalties on the part of HNZW.

■ H & K next contends that Southmark's payment of HNZW's attorney's fees creates an actual conflict of interest requiring disqualification. Some courts, applying a strict constructionist rule, have disqualified attorneys under such circumstances. *See In re Glenn Electric Sales Corp.*, 89 B.R. 410, 417–18 (Bankr.D.N.J. 1988); *In re 765 Assoc.*, 14 B.R. 449, 451–52 (Bankr.D.Haw.1981). Other courts have applied a more flexible rule. Under similar facts, the court in *In re Olson*, 36 B.R. 74, 76 (D.Neb.1983), held that since no actual conflict arose from the advance of attorney's fees to debtor's counsel, the attorneys would not be disqualified. *See also In re Tiffany Square Assoc.*, 103 B.R. 337, 339 (Murphy, B.J., 1988) (attorneys not disqualified where no objections made to parent's payment of debtor's attorney's fees).

The language of the Code itself suggests that some other entity may pay a debtor's attorney's fees in a case under Title 11. Pursuant to 11 U.S.C. Section 329(b) the court is authorized to review attorneys' compensation and to order the return of any excessive payment "to—(1) the estate ... or (2) *the entity that made such payment.*" (emphasis added). *See also* Bankruptcy Rule 2017(b). Thus, Section 329(b) clearly recognizes that such payments may be made.

■ The court recognizes that HNZW's representation of Southmark on unrelated matters and Southmark's payment of HNZW's attorneys' fees and expenses for representing this debtor presents a potential for conflict. These factors alone do not create an actual conflict requiring disqualification. However in the absence of an actual conflict, the court must balance the likelihood of an identifiable impropriety or appearance of impropriety against the very important right of a debtor to counsel of its own choice. *Cossette*, 647 F.2d at 530; *Kleiner*, 751 F.2d at 1210; *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir.1973). This is a one asset case with a limited number of creditors. The bulk of the debt is held by secured creditors, each of whom are represented by able counsel. There is no evidence of an actual impropriety or appearance of impropriety which would outweigh the debtor's right to counsel of its own choice.

In its motion to disqualify, H & K alleges an actual conflict based on HNZW's alleged failure to investigate and pursue recovery of alleged insider preferences against FEC Mortgage Company, prepetition tenant security deposits converted by Southmark Management, and collection of note payments due from the debtor's limited partners. H & K's evidence does not support these allegations. At best they raise questions of business judgment which the court should carefully scrutinize. However, the court should not interfere with such a business judgment absent bad faith or abuse. *See Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1046–47 (4th Cir.1985). No bad faith or abuse has been shown in this case. The court notes, however, that such matters may be relevant in considering the confirmation of a plan. In this case, H & K is the proponent of a competing plan. It is not unreasonable that competing adversaries will disagree, but this hardly amounts to an actual conflict.

Because of the multilayering of interests and the ultimate control of the debtor by Southmark, any attorney employed to represent the debtor would be subject to the same potential for conflicts that HNZW faces. Despite H & K's assertions to the contrary, there is no evidence that any of the potential for conflicts in HNZW's representation of the debtor have matured into an actual conflict requiring disqualification. Based on the foregoing reasoning, the court concludes that no actual conflict exists, and HNZW should not be disqualified. Since the first part of the two-pronged test is answered negatively, the court need not address the second prong of the disqualification test.

■ Lastly, the court will consider whether the debtor and HNZW provided adequate disclosure in the application for employment of counsel. When applying to serve as counsel for a debtor, an attorney is required to fully and candidly disclose all relationships with the debtor, creditors, or any other party in interest, and their respective attorneys and accountants, to enable the court to properly evaluate the application and determine whether the attorney is disinterested. Bankruptcy Rule 2014(a). In considering such application, the court is not required, and should not be expected, to search the record for relationships and conflicts which may have some bearing on whether the application should be approved. *In re B.E.S. Concrete Prod., Inc.*, 93 B.R. 228, 235–37 (Bankr.E.D.Cal. 1988); *In re Glenn Electric Sales Corp.*, 89 B.R. 410, 415 (Bankr.D.N.J.1988); *In re Automend, Inc.*, 85 B.R. 173, 178 (Bankr. N.D.Ga.1988); *In re Flying E Ranch Co.*, 81 B.R. 633, 637 (Bankr.D.Col.1988); *In re Roberts*, 75 B.R. 402, 410–11 (D.Utah 1987). The court must be presented the whole picture especially where there is a multilayering of relationships as in the present case. *See In re Sixth Avenue Car Care Center*, 81 B.R. 628, 631–32 (Bankr.D.Col. 1988). In such instances, the debtor and its attorney have both the burden and duty to fully and completely detail these relationships so that the court can make an informed judgment regarding the attorney's employment application. *In re Glenn Electric Sales Corp.*, 89 B.R. at 415; *In re Roberts*, 75 B.R. at 410–11.

■ The application, on which the court's order of approval was premised, did not disclose that Southmark would be advancing attorneys' fees to HNZW. This fact also should have been disclosed in the application, and the separately filed attorneys' compensation disclosure did not suffice. Likewise, the court should have been informed that Southmark owns and controls debtor's property manager, Southmark Management Company, debtor's general partner, Harmon/Envicon Associates, which claims to be a creditor of the debtor, and the related entity, FEC Mortgage Company, who claims to be a "secured" creditor of the debtor.[6]

In addition to these omissions, the application contained several erroneous statements as elaborated hereinbefore. The

---

**6.** The application also should have disclosed that FEC holds a security deed on the debtor's property, particularly since it now appears that the deed may not have been recorded.

whole picture was not presented. Based upon the evidence now before the court, it is obvious that the disclosures in the application were insufficient to enable the court to obtain a clear and complete picture of the true relationships. Even now, counsel seems to be unsure of some of the relationships. Accordingly, the court concludes that the disclosures in the application were both inadequate and incomplete.

■ HNZW tries to avoid the consequences of its errors and the failure to make disclosure by pointing to other pleadings in which such information appears. The court disagrees. None of these pleadings were included in the application. As noted earlier, the court is not required, and should not be expected, to search the record for relationships and potential conflicts which may have some bearing on an application.

From the evidence and the records, the court concludes that HNZW has no actual materially adverse interest to this debtor's estate, its creditors or equity security holders. However, there is a potential for conflict by virtue of the substantial representation of Southmark on unrelated matters, the payment of fees by Southmark, and the existence of materially adverse interests of related or affiliated subsidiary entities of Southmark. Should any potential conflict mature into an actual conflict, HNZW is required to immediately apprise the court and interested parties as soon as any such conflict arises. Failure to do so, or any delay in informing the court, may result in denial of all compensation and the imposition of disciplinary and other sanctions.

The application was signed by the debtor with an accompanying affidavit signed by Mr. Greenberg on behalf of HNZW. The court viewed their signatures as their certificate under Bankruptcy Rules 2014 and 9011 that the application was complete and accurate and based upon reasonable inquiry into the facts. *See In re Gray*, 64 B.R. 505 (Bankr.E.D.Mich.1986). When the omissions and erroneous statements are considered together, it seems obvious that this was not the case.

This court feels that disqualification at this late date would be too severe. It would needlessly prolong this case and would be disproportionate to the offense since there does not appear to be an actual conflict. The court, however, does not countenance the debtor and counsel's failure to make proper and timely disclosures. There are two plans presently pending, and this case is progressing toward conclusion. While no sanctions are imposed at this time, the court will require HNZW to file an application for approval of all attorneys' fees and expenses paid to it by any entity in connection with this case. In light of the lack of proper disclosure, the court will review such fees and expenses pursuant to Section 329(b) of the Code. Further, the entry of this order is without prejudice to H & K or any other party in interest to pursue discovery and subsequently show an actual conflict. Accordingly, it is

ORDERED that movant's motion to disqualify Holt, Ney, Zatcoff & Wasserman as counsel for the debtor in possession is DENIED, and it is

ORDERED that counsel for the debtor in possession shall provide the court within twenty (20) days of entry of this order with a full and complete disclosure of the pertinent relationships among the various parties in interest in this case, as well as counsel's relationships past, present, and future with the parties specified in Rule 2014, and it is

FURTHER ORDERED that should any potential for a conflict of interest mature into an actual conflict, debtor and debtor's counsel are directed to promptly apprise the court as soon as they become aware that such actual conflict exists, and any failure to so apprise the court may result in denial of all compensation and the imposition of disciplinary and other sanctions.

IT IS SO ORDERED.